(Slip Opinion) OCTOBER TERM, 2008 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## UNITED STATES *v.* DENEDO

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ARMED FORCES

No. 08–267.  Argued March 25, 2009—Decided June 8, 2009

Military authorities charged respondent, a native Nigerian serving in
the U. S. Navy, with violating of the Uniform Code of Military Justice
(UCMJ).  With counsel's assistance, respondent agreed to plead
guilty to reduced charges.  The special court-martial accepted the
plea and convicted and sentenced respondent; the Navy-Marine
Corps Court of Criminal Appeals (NMCCA) affirmed; and he was dis-
charged from the Navy in 2000.  In 2006, the Department of Home-
land Security commenced removal proceedings against respondent
based on the conviction.  To avoid deportation, he filed a petition for a
writ of *coram nobis* under the authority of the All Writs Act, asking
the NMCCA to vacate the conviction it had earlier affirmed on the
ground that his guilty plea resulted from ineffective assistance of
counsel, who had assured him his plea bargain carried no risk of de-
portation.  Though rejecting the Government's contention that it
lacked jurisdiction to grant the writ, the NMCCA denied relief for
lack of merit.  Agreeing that the NMCCA has jurisdiction, the Court
of Appeals for the Armed Forces (CAAF) remanded for further pro-
ceedings on the merits.

*Held:*

1. This Court has subject-matter jurisdiction under 28 U. S. C.
§1259(4), which permits it to review CAAF decisions in cases "in
which [that court] granted relief."  Respondent's parsimonious view
that the CAAF did not " 'gran[t] relief' " in this case, but simply re-
manded to the NMCCA, is rejected.  Though §1259 does not define
"relief," the word's familiar meaning encompasses any redress or
benefit provided by a court.  The CAAF's judgment reversing the
NMCCA satisfies that definition.  Pp. 4–5.

2. Article I military courts have jurisdiction to entertain *coram no-*

*bis* petitions to consider allegations that an earlier judgment of conviction was flawed in a fundamental respect.  Pp. 5–13.

(a) Military courts' power to issue extraordinary writs under the All Writs Act, see *Noyd* v. *Bond*, 395 U. S. 683, 695, n. 7, does not determine the anterior question whether those courts have jurisdiction to entertain a *coram nobis* petition.  As recognized by the All Writs Act—which permits "courts established by Act of Congress" to issue "all writs necessary or appropriate in aid of their respective jurisdictions," 28 U. S. C. §1651(a)—a court's power to issue any form of relief, extraordinary or otherwise, is contingent on its subject-matter jurisdiction over the case or controversy.  Such jurisdiction is determined by Congress.  *Bowles* v. *Russell*, 551 U. S. 205, 212.  Thus, to issue respondent a writ of *coram nobis* on remand, the NMCCA must have had statutory subject-matter jurisdiction over respondent's original judgment of conviction.  Pp. 5–8.

(b) Pursuant to the UCMJ, the NMCCA and the CAAF have subject-matter jurisdiction over this case.  The NMCCA has jurisdiction to entertain respondent's *coram nobis* request under UCMJ Article 66, which provides: "For the purpose of reviewing court-martial cases, the [NMCCA] may sit . . . ."  10 U. S. C. §866(a).  Because respondent's *coram nobis* request is simply a further "step in [his] criminal" appeal, *United States* v. *Morgan*, 346 U. S. 502, 505 n. 4, the NMCCA's jurisdiction to issue the writ derives from the earlier jurisdiction it exercised under §866(a) to hear and determine the conviction's validity on direct review.  Respondent's *coram nobis* request is not barred by the requirement that the NMCCA "act only with respect to the findings and sentence as approved by the convening authority."  §866(c).  An alleged error in the original judgment predicated on ineffective-assistance-of-counsel challenges the conviction's validity, see *Knowles* v. *Mirzayance, ante,* at ___, so respondent's Sixth Amendment claim is "with respect to" the special-court-martial's "findings" of guilty.  Because the NMCCA has jurisdiction, the CAAF has jurisdiction to review the NMCCA's denial of respondent's petition challenging the validity of his original conviction.  That the CAAF's authority is confined "to matters of law" connected to "the findings and sentence as approved by the convening authority and as affirmed or set aside by the Court of Criminal Appeals," §867(c), poses no obstacle to respondent's requested review.  His Sixth Amendment claim presents a "matte[r] of law" "with respect to the [guilty] findings . . . as approved by the [special court-martial] and as affirmed . . . by" the NMCCA.  Pp. 8–10.

(c) The Government's argument that UCMJ Article 76 affirmatively prohibits the type of collateral review respondent seeks errs in "conflating the jurisdictional question with the merits" of respon-

Syllabus

dent's petition, *Arthur Andersen LLP* v. *Carlisle, ante,* at \_\_\_. Article 76 provides for the finality of judgments in military cases. Just as the finality principle did not jurisdictionally bar the court in *Morgan, supra,* from examining its earlier judgment, neither does it bar the NMCCA from doing so here. The Government's contention that *coram nobis* permits a court to correct its *own* errors, not those of an inferior court, is disposed of on similar grounds. Pp. 10–12.

66 M. J. 114, affirmed and remanded.

KENNEDY, J., delivered the opinion of the Court, in which STEVENS, SOUTER, GINSBURG, and BREYER, JJ., joined. ROBERTS, C. J., filed an opinion concurring in part and dissenting in part, in which SCALIA, THOMAS, and ALITO, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

―――――――

No. 08–267

―――――――

## UNITED STATES, PETITIONER *v.* JACOB DENEDO

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ARMED FORCES

[June 8, 2009]

JUSTICE KENNEDY delivered the opinion of the Court.

The case before us presents a single issue: whether an Article I military appellate court has jurisdiction to entertain a petition for a writ of error *coram nobis* to challenge its earlier, and final, decision affirming a criminal conviction. The military court which had affirmed the conviction and where the writ of *coram nobis* was sought is the Navy-Marine Corps Court of Criminal Appeals (NMCCA). Its ruling that it had jurisdiction to grant the writ, but then denying its issuance for lack of merit, was appealed to the United States Court of Appeals for the Armed Forces (CAAF). After the CAAF agreed that the NMCCA has jurisdiction to issue the writ, it remanded for further proceedings on the merits. The Government of the United States, contending that a writ of *coram nobis* directed to a final judgment of conviction is beyond the jurisdiction of the military courts, now brings the case to us.

I

Respondent Jacob Denedo came to the United States in 1984 from his native Nigeria. He enlisted in the Navy in 1989 and became a lawful permanent resident in 1990. In 1998, military authorities charged him with conspiracy,

larceny, and forgery—in contravention of Articles 81, 121, and 123 of the Uniform Code of Military Justice (UCMJ), 10 U. S. C. §§881, 921, 923—all for his role in a scheme to defraud a community college. With the assistance of both military and civilian counsel, respondent made a plea bargain to plead guilty to reduced charges. In exchange for his plea the convening authority referred respondent's case to a special court-martial, §819, which, at that time, could not impose a sentence greater than six months' confinement.

The special court-martial, consisting of a single military judge, accepted respondent's guilty plea after determining that it was both knowing and voluntary. The court convicted respondent of conspiracy and larceny. It sentenced him to three months' confinement, a bad-conduct discharge, and a reduction to the lowest enlisted pay grade. Respondent appealed on the ground that his sentence was unduly severe. The NMCCA affirmed. App. to Pet. for Cert. 64a–67a. Respondent did not seek further review in the CAAF, and he was discharged from the Navy on May 30, 2000.

In 2006, the Department of Homeland Security commenced removal proceedings against respondent based upon his special court-martial conviction. To avoid deportation, respondent decided to challenge his conviction once more, though at this point it had been final for eight years. He maintained, in a petition for a writ of *coram nobis* filed with the NMCCA, that the conviction it had earlier affirmed must be deemed void because his guilty plea was the result of ineffective assistance of counsel. Respondent alleged that he informed his civilian attorney during plea negotiations that "'his primary concern and objective'" was to avoid deportation and that he was willing to "'risk . . . going to jail'" to avert separation from his family. 66 M. J. 114, 118 (C. A. Armed Forces 2008). On respondent's account, his attorney—an alcoholic who was not

sober during the course of the special court-martial pro-
ceeding—erroneously assured him that "'if he agreed to
plead guilty at a special-court-martial he would avoid any
risk of deportation.'" *Ibid.* Petitioner argued that the
NMCCA could set aside its earlier decision by issuing a
writ of *coram nobis* under the authority of the All Writs
Act, 28 U. S. C. §1651(a).

The Government filed a motion to dismiss for want of
jurisdiction. It contended that the NMCCA had no author-
ity to conduct postconviction proceedings. In a terse, four-
sentence order, the NMCCA summarily denied both the
Government's motion and respondent's petition for a writ
of *coram nobis*. App. to Pet. for Cert. 63a. Respondent
appealed and the CAAF, dividing 3 to 2, affirmed in part
and reversed in part. The CAAF agreed with the NMCCA
that standing military courts have jurisdiction to conduct
"collateral review under the All Writs Act." 66 M. J., at
119. This is so, the CAAF explained, because "when a
petitioner seeks collateral relief to modify an action that
was taken within the subject matter jurisdiction of the
military justice system . . . a writ that is necessary or
appropriate may be issued under the All Writs Act 'in aid
of' the court's existing jurisdiction." *Id.,* at 120 (citing 28
U. S. C. §1651(a)).

Satisfied that it had jurisdiction, the CAAF next turned
to whether the writ of *coram nobis* should issue. It held
that a nondefaulted, ineffective-assistance claim that was
yet to receive a full and fair review "within the military
justice system" could justify issuance of the writ. 66 M. J.,
at 125. Finding that respondent's ineffective-assistance
claim satisfied "the threshold criteria for coram nobis
review," the CAAF remanded to the NMCCA so it could
ascertain in the first instance "whether the merits of
[respondent's] petition can be resolved on the basis of the
written submissions, or whether a factfinding hearing is
required." *Id.*, at 126, 130.

Judge Stucky filed a dissenting opinion. Assuming that the majority had correctly determined its jurisdiction to grant the requested relief, he concluded that respondent's ineffective-assistance claim lacked merit. *Id.*, at 131. Judge Ryan also dissented. Reasoning that the majority had misapplied this Court's holding in *Clinton* v. *Goldsmith,* 526 U. S. 529 (1999), she concluded that the UCMJ does not confer jurisdiction upon military tribunals to conduct "post-finality collateral review." 66 M. J., at 136. We granted certiorari, 555 U. S. ___ (2008), and now affirm.

## II

Before we address another court's subject-matter jurisdiction we must first determine our own. See *Ashcroft* v. *Iqbal*, *ante,* at 6 ("Subject-matter jurisdiction . . . should be considered when fairly in doubt"). The Government, upon which the burden to demonstrate subject-matter jurisdiction lies, *DaimlerChrysler Corp.* v. *Cuno,* 547 U. S. 332, 342 (2006), claims that our power to hear this appeal rests on 28 U. S. C. §1259(4). That jurisdictional provision permits us to review CAAF decisions in "'cases . . . in which the Court of Appeals for the Armed Forces . . . granted relief.'" Respondent maintains that we lack jurisdiction because the CAAF did not "'grant relief'"; "all it did was remand" to the NMCCA. Brief for Respondent 6–7 (brackets omitted).

Respondent's parsimonious construction of the word "relief" need not detain us long. Though §1259 does not define the term, its familiar meaning encompasses any "redress or benefit" provided by a court. Black's Law Dictionary 1317 (8th ed. 2004). The CAAF's judgment reversing the NMCCA satisfies that definition. The NMCCA denied respondent's petition for a writ of *coram nobis,* while the CAAF's decision reversed and remanded so that the NMCCA could determine anew if the writ

should issue. That decision conferred a palpable benefit on respondent; for a chance of success on the merits, however slight, is superior to no possibility at all.

To be sure, respondent would have preferred the CAAF to issue a writ of *coram nobis* or to direct the NMCCA to do so rather than remanding for the NMCCA to conduct further proceedings. We have jurisdiction, however, to review any decision granting "relief," not just those providing "ultimate relief" or "complete relief." Indeed, appellate courts reverse and remand lower court judgments—rather than issuing complete relief—with regularity. See, *e.g., Arthur Andersen LLP* v. *Carlisle, ante,* at \_\_\_; *FCC* v. *Fox Television Stations, Inc., ante,* at \_\_\_. There is no merit to the view that a decision granting partial relief should be construed as granting no relief at all.

Because the CAAF "granted relief" to respondent, the text of §1259 is satisfied here. We have jurisdiction to determine whether the CAAF was correct in ruling that the NMCCA had authority to entertain the petition for a writ of *coram nobis*.

### III
### A

The writ of *coram nobis* is an ancient common-law remedy designed "to correct errors of fact." *United States* v. *Morgan*, 346 U. S. 502, 507 (1954). In American jurisprudence the precise contours of *coram nobis* have not been "well defined," *Bronson* v. *Schulten*, 104 U. S. 410, 416 (1882), but the writ traces its origins to the King's Bench and the Court of Common Pleas. *United States* v. *Plumer*, 27 F. Cas. 561, 573 (No. 16,056) (CC Mass. 1859) (opinion for the court by Clifford, Circuit Justice); see also *Morgan, supra,* at 507, n. 9 (citing 2 W. Tidd, Practice of Courts of King's Bench and Common Pleas *1136–*1137). In English practice the office of the writ was to foster respect for judicial rulings by enabling the same court

"where the action was commenced and where the judgment was rendered" to avoid the rigid strictures of judgment finality by correcting technical errors "such as happened through the fault of the clerk in the record of the proceedings prior to the judgment." *Plumer*, *supra*, at 572–573.

Any rationale confining the writ to technical errors, however, has been superseded; for in its modern iteration *coram nobis* is broader than its common-law predecessor. This is confirmed by our opinion in *Morgan*. In that case we found that a writ of *coram nobis* can issue to redress a fundamental error, there a deprivation of counsel in violation of the Sixth Amendment, as opposed to mere technical errors. 346 U. S., at 513. The potential universe of cases that range from technical errors to fundamental ones perhaps illustrates, in the case of *coram nobis*, the "tendency of a principle to expand itself to the limit of its logic." B. Cardozo, The Nature of the Judicial Process 51 (1921). To confine the use of *coram nobis* so that finality is not at risk in a great number of cases, we were careful in *Morgan* to limit the availability of the writ to "extraordinary" cases presenting circumstances compelling its use "to achieve justice." 346 U. S., at 511. Another limit, of course, is that an extraordinary remedy may not issue when alternative remedies, such as habeas corpus, are available. See *id.*, at 510–511.

In federal courts the authority to grant a writ of *coram nobis* is conferred by the All Writs Act, which permits "courts established by Act of Congress" to issue "all writs necessary or appropriate in aid of their respective jurisdictions." 28 U. S. C. §1651(a). Though military courts, like Article III tribunals, are empowered to issue extraordinary writs under the All Writs Act, *Noyd* v. *Bond*, 395 U. S. 683, 695, n. 7 (1969), that authority does not determine the anterior question whether military courts have jurisdiction to entertain a petition for *coram nobis*. As the

text of the All Writs Act recognizes, a court's power to issue any form of relief—extraordinary or otherwise—is contingent on that court's subject-matter jurisdiction over the case or controversy.

Assuming no constraints or limitations grounded in the Constitution are implicated, it is for Congress to determine the subject-matter jurisdiction of federal courts. *Bowles* v. *Russell*, 551 U. S. 205, 212 (2007) ("Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider"). This rule applies with added force to Article I tribunals, such as the NMCCA and CAAF, which owe their existence to Congress' authority to enact legislation pursuant to Art. I, §8 of the Constitution. *Goldsmith*, 526 U. S., at 533–534.

Our decision in *Goldsmith* demonstrates these teachings. There an Air Force officer, James Goldsmith, was convicted of various crimes by general court-martial and sentenced to six years' confinement. *Id.,* at 531. Following his conviction, Congress enacted a statute authorizing the President to drop convicted officers from the rolls of the Armed Forces. When the Air Force notified Goldsmith that he would be dropped from the rolls, he lodged a petition before the Air Force Court of Criminal Appeals (AFCCA) claiming that the proposed action contravened the *Ex Post Facto* Clause of the Constitution. *Id.,* at 532–533. Goldsmith sought extraordinary relief as authorized by the All Writs Act to enjoin the President from removing him from the rolls. The AFCCA denied relief, but the CAAF granted it.

Concluding that the UCMJ does not authorize military courts to review executive action—including a decision to drop an officer from the rolls—we held that the AFCCA and the CAAF lacked jurisdiction over Goldsmith's case. *Id.,* at 535. This was so, we unequivocally found, irrespective of the military court's authority to issue extraordinary relief pursuant to the All Writs Act and its previous juris-

diction over Goldsmith's criminal proceeding. The power to issue relief depends upon, rather than enlarges, a court's jurisdiction. *Id.,* at 536–537.

That principle does not control the question before us. Because *coram nobis* is but an extraordinary tool to correct a legal or factual error, an application for the writ is properly viewed as a belated extension of the original proceeding during which the error allegedly transpired. See *Morgan, supra,* at 505, n. 4 (*coram nobis* is "a step in the criminal case and not, like habeas corpus where relief is sought in a separate case and record, the beginning of a separate civil proceeding"); see also *United States* v. *Beggerly,* 524 U. S. 38, 46 (1998) (citing *Pacific R. Co. of Mo.* v. *Missouri Pacific R. Co.*, 111 U. S. 505, 522 (1884) (noting that an "independent action"—which, like *coram nobis*, is an equitable means to obtain relief from a judgment— "'may be regarded as ancillary to the prior suit, so that the relief asked may be granted by the court which made the decree in that suit . . . . The bill, though an original bill in the chancery sense of the word, is a continuation of the former suit, on the question of the jurisdiction of the [court]'"). It follows that to issue respondent a writ of *coram nobis* on remand, the NMCCA must have had statutory subject-matter jurisdiction over respondent's original judgment of conviction.

## B

In the critical part of its opinion discussing the jurisdiction and authority of the NMCCA to issue a writ of *coram nobis* in an appropriate case, the CAAF describes respondent's request for review as one "under the All Writs Act." 66 M. J., at 119. This is correct, of course, if it simply confirms that the Act authorizes federal courts to issue writs "in aid of" their jurisdiction; but it does not advance the inquiry into whether jurisdiction exists.

And there are limits to the use of *coram nobis* to alter or

interpret earlier judgments. As *Goldsmith* makes plain, the All Writs Act and the extraordinary relief the statute authorizes are not a source of subject-matter jurisdiction. 526 U. S., at 534–535. Statutes which address the power of a court to use certain writs or remedies or to decree certain forms of relief, for instance to award damages in some specified measure, in some circumstances might be construed also as a grant of jurisdiction to hear and determine the underlying cause of action. Cf. *Marbury* v. *Madison*, 1 Cranch 137 (1803). We have long held, however, that the All Writs Act should not be interpreted in this way. *Goldsmith, supra,* at 536; *Plumer*, 27 F. Cas., at 574 (jurisdiction cannot be acquired "by means of the writ to be issued"). The authority to issue a writ under the All Writs Act is not a font of jurisdiction. See *Syngenta Crop Protection, Inc.* v. *Henson*, 537 U. S. 28, 31 (2002).

Quite apart from the All Writs Act, we conclude that the NMCCA has jurisdiction to entertain respondent's request for a writ of *coram nobis*. Article 66 of the UCMJ provides: "For the purpose of reviewing court-martial cases, the [Court of Criminal Appeals] may sit . . . ." 10 U. S. C. §866(a). Because respondent's request for *coram nobis* is simply a further "step in [his] criminal" appeal, *Morgan*, 346 U. S., at 505, n. 4, the NMCCA's jurisdiction to issue the writ derives from the earlier jurisdiction it exercised to hear and determine the validity of the conviction on direct review. As even the Government concedes, the textual authority under the UCMJ to "'revie[w] court-martial cases'" provided the NMCCA with jurisdiction to hear an appeal of respondent's judgment of conviction. See Brief for United States 17–18. That jurisdiction is sufficient to permit the NMCCA to entertain respondent's petition for *coram nobis*. See also Courts of Criminal Appeals Rule of Practice and Procedure 2(b) (recognizing NMCCA discretionary authority to entertain petitions for extraordinary writs).

It is true that when exercising its jurisdiction under §866(a), the NMCCA "may act only with respect to the findings and sentence as approved by the convening authority." §866(c). That limitation does not bar respondent's request for a writ of *coram nobis.* An alleged error in the original judgment predicated on ineffective-assistance-of-counsel challenges the validity of a conviction, see *Knowles* v. *Mirzayance, ante,* at 3, so respondent's Sixth Amendment claim is "with respect to" the special-court-martial's "findings of guilty," 10 U. S. C. §866(c). Pursuant to the UCMJ, the NMCCA has subject-matter jurisdiction to hear respondent's request for extraordinary relief.

Because the NMCCA had jurisdiction over respondent's petition for *coram nobis*, the CAAF had jurisdiction to entertain respondent's appeal from the NMCCA's judgment. When exercising its jurisdiction, the CAAF's authority is confined "to matters of law" connected to "the findings and sentence as approved by the convening authority and as affirmed or set aside . . . by the Court of Criminal Appeals," §867(c), but these limitations pose no obstacle to respondent's requested review of the NMCCA's decision. Respondent's Sixth Amendment claim presents a "matte[r] of law" "with respect to the [guilty] findings . . . as approved by the [special court-martial] and as affirmed . . . by the Court of Criminal Appeals." *Ibid.* The CAAF had subject-matter jurisdiction to review the NMCCA's denial of respondent's petition challenging the validity of his original conviction.

C

The Government counters that Article 76 of the UCMJ, 10 U. S. C. §876, "affirmatively prohibit[s] the type of collateral review sought by respondent." Brief for United States 18. That is incorrect. The Government's argument commits the error of "conflating the jurisdictional question

with the merits" of respondent's petition. *Arthur Andersen LLP*, *ante,* at 3. Article 76 states in relevant part:

> "The appellate review of records of trial provided by this chapter, the proceedings, findings, and sentences of courts-martial as approved, reviewed, or affirmed as required by this chapter, and all dismissals and discharges carried into execution under sentences by courts-martial following approval, review, or affirmation as required by this chapter, are final and conclusive. Orders publishing the proceedings of courts-martial and all action taken pursuant to those proceedings are binding upon all departments, courts, agencies, and officers of the United States . . . ." 10 U. S. C. §876.

Article 76 codifies the common-law rule that respects the finality of judgments. *Schlesinger* v. *Councilman*, 420 U. S. 738, 749 (1975). Just as the rules of finality did not jurisdictionally bar the court in *Morgan* from examining its earlier judgment, neither does the principle of finality bar the NMCCA from doing so here.

The Government may ultimately be correct that the facts of respondent's case are insufficient to set aside the final judgment that Article 76 makes binding. No doubt, judgment finality is not to be lightly cast aside; and courts must be cautious so that the extraordinary remedy of *coram nobis* issues only in extreme cases. But the long-recognized authority of a court to protect the integrity of its earlier judgments impels the conclusion that the finality rule is not so inflexible that it trumps each and every competing consideration. Our holding allows military courts to protect the integrity of their dispositions and processes by granting relief from final judgments in extraordinary cases when it is shown that there were fundamental flaws in the proceedings leading to their issuance. The Government remains free to argue that

respondent's is a merely ordinary case that is not entitled to extraordinary relief. But respondent's entitlement to relief is a merits question outside the scope of the jurisdictional question presented.

The Government's contention that *coram nobis* permits a court "to correct its *own* errors, not . . . those of an inferior court," Brief for United States 36, can be disposed of on similar grounds. Just as respondent's request for *coram nobis* does not confer subject-matter jurisdiction, the Government's argument that the relief should not issue "in light of the writ's traditional scope" does not undermine it, *ibid.* (emphasis deleted). In sum, the Government's argument speaks to the scope of the writ, not the NMCCA's jurisdiction to issue it. The CAAF rejected the former argument. Only the latter one is before us.

We hold that Article I military courts have jurisdiction to entertain *coram nobis* petitions to consider allegations that an earlier judgment of conviction was flawed in a fundamental respect. That conclusion is consistent with our holding that Article III courts have a like authority. *Morgan,* 346 U. S., at 508. The result we reach today is of central importance for military courts. The military justice system relies upon courts that must take all appropriate means, consistent with their statutory jurisdiction, to ensure the neutrality and integrity of their judgments. Under the premises and statutes we have relied upon here, the jurisdiction and the responsibility of military courts to reexamine judgments in rare cases where a fundamental flaw is alleged and other judicial processes for correction are unavailable are consistent with the powers Congress has granted those courts under Article I and with the system Congress has designed.

\* \* \*

We do not prejudge the merits of respondent's petition. To be sure, the writ of error *coram nobis* is an extraordi-

nary writ; and "an extraordinary remedy . . . should not be granted in the ordinary case." *Nken* v. *Holder, ante,* at 1 (KENNEDY, J., concurring). The relative strength of respondent's ineffective-assistance claim, his delay in lodging his petition, when he learned or should have learned of his counsel's alleged deficiencies, and the effect of the rule of judgment finality expressed in Article 76 are all factors the NMCCA can explore on remand. We hold only that the military appellate courts had jurisdiction to hear respondent's request for a writ of *coram nobis*. The judgment of the CAAF is affirmed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 08–267

———————

## UNITED STATES, PETITIONER *v.* JACOB DENEDO

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ARMED FORCES

[June 8, 2009]

CHIEF JUSTICE ROBERTS, with whom JUSTICE SCALIA, JUSTICE THOMAS, and JUSTICE ALITO join, concurring in part and dissenting in part.

The Court's approach is simple: Jurisdiction to issue writs of *coram nobis* is a "belated extension" of a court's original, statutory jurisdiction. *Ante*, at 8. The military courts here had original jurisdiction over Denedo's case. Those courts therefore have implicit "extended" jurisdiction to consider Denedo's *coram nobis* petition.

The flaw in this syllogism is at the first step: The only arguable authority for the proposition that *coram nobis* jurisdiction marches hand in hand with original jurisdiction is a footnote in *United States* v. *Morgan*, 346 U. S. 502 (1954), and that case concerned Article III courts. The military courts are markedly different. They are Article I courts whose jurisdiction is precisely limited at every turn. Those careful limits cannot be overridden by judicial "extension" of statutory jurisdiction, or the addition of a "further step" to the ones marked out by Congress. *Ante*, at 9 (internal quotation marks omitted).

I agree with the majority that this Court has jurisdiction to review the decision below, but respectfully dissent from its holding that military courts have jurisdiction to issue writs of *coram nobis*.

I

"Traditionally, military justice has been a rough form of justice emphasizing summary procedures, speedy convictions and stern penalties with a view to maintaining obedience and fighting fitness in the ranks." *Reid* v. *Covert*, 354 U. S. 1, 35–36 (1957) (plurality opinion). Courts-martial are composed of active service members who sit only to hear the particular case before them. Once a court-martial reaches a judgment and imposes a sentence, it is dissolved, and its members return to their regular duties.

Prior to the Uniform Code of Military Justice (UCMJ), military courts of appeals did not exist. If a service member wanted to challenge a court-martial conviction, he pursued a collateral attack in an Article III court. There, review was limited to whether the conviction was void "because of lack of jurisdiction or some other equally fundamental defect," *Schlesinger* v. *Councilman*, 420 U. S. 738, 747 (1975); beyond that, Article III courts adhered to "the general rule that the acts of a court martial, within the scope of its jurisdiction and duty, cannot be controlled or reviewed in the civil courts," *Smith* v. *Whitney*, 116 U. S. 167, 177 (1886).

The UCMJ established a "complete system of [military] review," *Burns* v. *Wilson*, 346 U. S. 137, 140 (1953) (plurality opinion), including direct review in what are now the Courts of Criminal Appeals (CCAs) and the Court of Appeals for the Armed Forces (CAAF). But in keeping with the historical backdrop against which these courts were created, Congress did not grant military courts of appeals "broad responsibility with respect to administration of military justice"; on the contrary, their jurisdiction is "narrowly circumscribed" by the governing statutes. *Clinton* v. *Goldsmith*, 526 U. S. 529, 534, 535 (1999) (internal quotation marks omitted).

    The CCAs provide direct, record-based review of court-
martial judgments, but they may only review cases re-
ferred by the judge advocate general, who in turn refers
only those cases in which specific sentences are imposed.
10 U. S. C. §§866(b), (c).  When reviewing that subset of
court-martial judgments, a CCA "may act only with re-
spect to the findings and sentence as approved by the
convening authority."  §866(c).  If a case is reviewed by the
CCA, the CCA's decision may then be reviewed by the
CAAF.  §867(a).  But that court, too, conducts limited
direct review: It "may act only with respect to the findings
and sentence as approved by the convening authority and
as affirmed or set aside as incorrect in law by the [CCA]."
§867(c).  Once direct review in the CCA and the CAAF is
complete, and review in this Court is exhausted or waived,
a judgment as to the legality of the court-martial proceed-
ings is final, and the sentence imposed may be executed.
§871(c)(1).
    The UCMJ provides only one avenue for reconsideration
of a final court-martial conviction: a petition for a new
trial under Article 73.  See §873.  An Article 73 petition
may be brought "within two years after approval by the
convening authority of a court-martial sentence," meaning
it may be brought before or after a conviction becomes
final.  *Ibid.*  If direct review is still pending before a CCA
or the CAAF when the petition is filed, the judge advocate
general (to whom the petition must be directed) will refer
the petition to that court.  *Ibid.*  But once the conviction is
final, only the judge advocate general may act on an Arti-
cle 73 petition.  *Ibid.*
    Article 76 "'describ[es] the terminal point for proceed-
ings within the court-martial system.'"  *Councilman,
supra*, at 750 (quoting *Gusik* v. *Schilder*, 340 U. S. 128,
132 (1950)).  Under that provision, final court-martial
judgments are "binding upon all departments, courts,
agencies, and officers of the United States, *subject only* to

action upon a petition for a new trial [under Article 73],” or to action by the appropriate Secretary or the President. 10 U. S. C. §876 (emphasis added). Once an Article 73 petition is denied, a service member has no relief left to seek within the court-martial system. See *Gusik, supra*, at 133–134.[1]

Federal courts are authorized to issue extraordinary writs such as *coram nobis* only as “necessary or appropriate in aid of their respective jurisdictions.” 28 U. S. C. §1651(a). The All Writs Act “confine[s] the power of the CAAF to issuing process ‘in aid of’ its existing statutory jurisdiction” and “does not enlarge that jurisdiction.” *Goldsmith, supra*, at 534–535; see also *Noyd* v. *Bond*, 395 U. S. 683, 695, n. 7 (1969) (although military courts can issue extraordinary writs in aid of their direct review jurisdiction, “[a] different question would, of course, arise in a case which the [courts are] not authorized to review under the governing statutes”). The UCMJ grants military courts of appeals no jurisdiction over final court-martial judgments, so there is no jurisdiction for a post-conviction extraordinary writ to “aid.” A petition for *coram nobis* by its nature seeks postconviction review; it is therefore beyond the scope of these courts’ “narrowly circumscribed” statutory jurisdiction. *Goldsmith, supra*, at 535.

## II

The majority overrides these careful limits on military court jurisdiction by maintaining that later jurisdiction to

---

[1] A court-martial conviction may still be collaterally attacked in an Article III court, but that is because *those* courts possess jurisdiction beyond that granted by the UCMJ. See, *e.g.*, 28 U. S. C. §§2241, 1331. We have repeatedly held that Article 76 “does not expressly effect any change in the subject-matter jurisdiction of Art. III courts.” *Schlesinger* v. *Councilman*, 420 U. S. 738, 749 (1975). Our cases have never questioned that Article 76 limits the jurisdiction of *military* courts.

issue *coram nobis* is a "belated extension" of the statutory jurisdiction, that "jurisdiction to issue [*coram nobis*] derives from the earlier jurisdiction." *Ante*, at 8, 9. The authority the Court cites for this key jurisdictional analysis is—a footnote. See *ante*, at 8 (citing *Morgan*, 346 U. S., at 505, n. 4); *ante*, at 9 (same). Now, footnotes are part of an opinion, too, even if not the most likely place to look for a key jurisdictional ruling. But since footnote 4 plays such an indispensable role in the majority's analysis, it must be read with care.

The first thing you notice in doing so is that the footnote does not mention the word "jurisdiction" at all. That is because it has nothing to do with jurisdiction. The issue addressed in the paragraph to which the footnote was appended was "choice of remedy." 346 U. S., at 505. The Court concluded that *coram nobis* was the appropriate one. The footnote simply addressed the concern that the remedy might not be available because the Federal Rules of Civil Procedure had abolished *coram nobis* as a remedy; the concern was dismissed because the Court concluded the criminal rules, not the civil rules, applied. *Id.*, at 505, n. 4; see also *United States* v. *Keogh*, 391 F. 2d 138, 140 (CA2 1968) (Friendly, J.) ("The problem to which the footnote was addressed was that F. R. Civ. P. 60(b) had abolished writs of error *coram nobis*").

The point is further confirmed by the text in the body of the opinion: The Court's conclusion in the paragraph in which the footnote appears is that since the remedy sought was "in the nature of . . . *coram nobis*," the trial court could "properly *exercise* its jurisdiction." 346 U. S., at 505 (emphasis added). The issue was not the existence of jurisdiction, but whether the court had the authority to exercise it. The Court in the present case recognizes the distinction. See *ante*, at 10 ("When exercising its jurisdiction, the CAAF's authority is confined to matters of law" (internal quotation marks omitted)); *ante*, at 9 ("The au-

thority to issue a writ under the All Writs Act is not a font of jurisdiction").

Even accepting the majority's reading of *Morgan*'s hitherto obscure footnote, that reading would only establish the "belated jurisdiction" theory for Article III courts. The military courts are Article I courts. The distinction has direct pertinence to the point at issue in this case.

Legal doctrines "must be placed in their historical setting. They cannot be wrenched from it and mechanically transplanted into an alien, unrelated context without suffering mutilation or distortion." *Reid*, 354 U. S., at 50 (Frankfurter, J., concurring in result). The Article III courts have been given broad jurisdiction. I can understand, if not necessarily agree with, the notion that they might enjoy some implicit "long-recognized authority" to correct their earlier judgments. See *ante*, at 11. But not so for Article I courts. The principle that Congress defines the jurisdiction of the lower federal courts "applies with added force to Article I tribunals." *Ante*, at 7. That is especially true with respect to military courts. The military justice system is the last place courts should go about finding "extensions" of jurisdiction beyond that conferred by statute.

As we expressly recognized in *Goldsmith*, "there is no source of *continuing* jurisdiction for the CAAF over all actions administering sentences that the CAAF *at one time* had the power to review." 526 U. S., at 536 (emphasis added). Since the UCMJ grants military courts no postconviction jurisdiction, conferring on them perpetual authority to entertain *coram nobis* petitions plainly contravenes that basic principle.[2]

---

[2] Once you get into the business of extending jurisdiction, it can be hard to stop. Denedo is no longer in the military. *Ante*, at 2. Military courts lack jurisdiction over "civilian ex-soldiers who ha[ve] severed all relationship with the military and its institutions." *United States ex rel. Toth* v. *Quarles*, 350 U. S. 11, 14 (1955). In the event *coram nobis*

## III

Even if the majority's reading of *Morgan*'s footnote could be transplanted to the military context, the majority's conclusion would still not follow. "'[T]he All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling.'" *Carlisle* v. *United States*, 517 U. S. 416, 429 (1996) (quoting *Pennsylvania Bureau of Correction* v. *United States Marshals Service*, 474 U. S. 34, 43 (1985)).

The UCMJ contains not one, but two provisions specifically limiting the circumstances under which postconviction relief (other than action by the appropriate Secretary or the President) may be obtained within the court-martial system. First, Article 73 provides that, "within two years after approval by the convening authority of a court-martial sentence, the accused may petition the Judge Advocate General for a new trial on the grounds of newly discovered evidence or fraud on the court." 10 U. S. C. §873. The only relief available under this "special post-conviction remedy" is a new trial, *Burns*, 346 U. S., at 141 (plurality opinion), and even that may be granted only in an expressly circumscribed timeframe (two years) and set of circumstances (newly discovered evidence or fraud on the court). Article 73 stands in stark contrast to *coram nobis*, which the majority characterizes as a writ infinitely available "to redress a[ny] fundamental error." *Ante*, at 6; see *Morgan*, *supra*, at 512 ("fundamental error" not limited to jurisdictional defects or errors on the face of the

---

does issue with respect to a former service member, the Government maintains it would lack jurisdiction to retry. Tr. of Oral Arg. 56–57; see 10 U. S. C. §§802–803. Avoiding that extraordinary result would require another "belated extension" of the original court-martial proceeding, expanding the jurisdiction of military courts to try individuals who have long since severed their ties to the military.

record).

To be sure, the limited nature of relief available under Article 73 might lead one to question whether that is truly the *only* postconviction relief the UCMJ permits. "You're in the Army now" is a sufficient answer to such concerns; the relief available looks positively extravagant in light of the prior history and tradition of military justice. In any event, as the majority recognizes, see *ante*, at 11, Article 76 makes clear that all court-martial judgments "carried into execution" after completion of direct review are "final and conclusive," 10 U. S. C. §876. Contrary to the majority's assertion, that language does not simply "codif[y] the common-law rule that respects the finality of judgments." *Ante*, at 11. In fact, Article 76 does not stop there. It goes on to instruct that final court-martial judgments are binding "*subject only* to action upon a petition for a new trial [under Article 73]," or action by the appropriate Secretary or the President. 10 U. S. C. §876 (emphasis added).

In light of these provisions, only Article 73 provides *any* authority to the CCAs or the CAAF, and even that narrow authority is limited to pending cases. Once a conviction is final, only the judge advocate general can provide relief. See *supra*, at 3; 10 U. S. C. §873. To the extent the CCAs or the CAAF could be deemed to have some inherent continuing authority to issue writs of *coram nobis*, Articles 73 and 76 extinguish it.

## IV

The Government goes on to argue that even if military courts have jurisdiction to issue writs of *coram nobis*, and even if Articles 73 and 76 do not bar such relief, the courts still lack authority to issue *coram nobis*, because the writ is neither "necessary" nor "appropriate" to the court-martial system of justice. See 28 U. S. C. §1651(a) (federal courts "may issue all writs necessary or appropriate in aid

of their respective jurisdictions"). *Coram nobis* allows the court that issued a judgment to correct its own errors of fact. See *Morgan*, 346 U. S., at 507, n. 9 ("'If a judgment in the King's Bench be erroneous in matter of *fact* only, . . . it may be reversed *in the same court*, by writ of error *coram nobis*'" (quoting 2 W. Tidd, Practice of the Courts of King's Bench, and Common Pleas 1136 (4th Am. ed. 1856); some emphasis added)); see also *ante*, at 11 (referring to "authority of a court to protect the integrity of *its* earlier judgments" (emphasis added)). But a court-martial is not a standing court. On a case-by-case basis, "[i]t is called into existence for a special purpose and to perform a particular duty. When the object of its creation has been accomplished it is dissolved." *Runkle* v. *United States*, 122 U. S. 543, 555–556 (1887); see also 66 M. J. 114, 124 (CAAF 2008) (a court-martial "does not have independent jurisdiction over a case after the military judge authenticates the record and the convening authority forwards the record after taking action"). Because the court-martial that issues the conviction no longer exists once the conviction is final, there is no court to which a postconviction petition for *coram nobis* could be directed.

The absence of standing courts-martial is no mere technicality, but rather an integral and intentional part of the military justice system. "Court-martial jurisdiction sprang from the belief that within the military ranks there is need for a prompt, ready-at-hand means of compelling obedience and order." *United States ex rel. Toth* v. *Quarles*, 350 U. S. 11, 22 (1955). But meeting that need requires expending significant military resources, and "[t]o the extent that those responsible for performance of [the military's] primary function are diverted from it by the necessity of trying cases, the basic fighting purpose of armies is not served." *Id.*, at 17. Accordingly, courts-martial, composed of active duty military personnel, have always been called into existence for a limited purpose and duration.

It is no answer that the CCAs and the CAAF are standing courts that could act as substitutes for *coram nobis* purposes.  As this case illustrates, those courts are not equipped to handle the kind of factfinding necessary to resolve claims that might be brought on *coram nobis*.  Instead, the CCAs will have to resort to the procedures invented by *United States* v. *DuBay*, 17 U. S. C. M. A. 147, 37 C. M. R. 411 (1967), under which a new convening authority will refer a case to a new court-martial, and task various military personnel who have no prior familiarity with the case to conduct an out-of-court evidentiary hearing on the merits of the petitioner's claim.  *Id.*, at 149, 37 C. M. R., at 413.  This "unwieldy and imperfect system" will undoubtedly divert valuable military resources, 66 M. J., at 136 (Ryan, J., dissenting), all in aid of postconviction relief Congress specifically withheld.

The Court expressly declines to consider the Government's "necessary or appropriate" argument: "[T]he Government's argument speaks to the scope of the writ, not the [CCA's] jurisdiction to issue it.  The CAAF rejected the former argument.  Only the latter one is before us."  *Ante*, at 12.  The Court may well be correct in dividing the questions into separate pigeonholes.  But the Government's argument, even if an argument about authority rather than jurisdiction, applies to *every coram nobis* case, given the nature of the military justice system.  It is curious to conclude that military courts have jurisdiction, while not considering a raised and briefed argument that they may never exercise it.

\*     \*     \*

Since the adoption of the UCMJ, "Congress has gradually changed the system of military justice so that it has come to more closely resemble the civilian system."  *Weiss* v. *United States*, 510 U. S. 163, 174 (1994).  "But the military in important respects remains a specialized society

separate from civilian society." *Ibid.* (internal quotation marks omitted). Neither the jurisdiction nor the powers of Article III courts are necessarily appropriate for military courts, and Congress's contrary determinations in this area are entitled to "the highest deference." *Loving* v. *United States*, 517 U. S. 748, 768 (1996). Rather than respect the rule that military courts have no jurisdiction to revisit final convictions, the majority creates an exception that swallows it. Because I would hold the military courts to the statutory restraints that govern them, I respectfully dissent.