# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

| | | |
|---|---|---|
| In re Steven M. CHAPMAN | ) | **Misc. Dkt. No. 2022-05** |
| Airman Basic (E-1) | ) | |
| U.S. Air Force | ) | |
| *Petitioner* | ) | |
| | ) | **ORDER** |
| | ) | |
| | ) | |
| | ) | |
| | ) | **Panel 1** |

Petitioner seeks extraordinary relief in the nature of a writ of error *coram nobis*. He asks us to set aside the findings and sentence from his 2002 court-martial under the theories that the military judge made an instructional error and that both his trial and appellate defense counsel provided him ineffective assistance. Petitioner has raised these same claims on several occasions before both this court and other courts through habeas corpus petitions.

Petitioner also requests we order the appointment of an appellate counsel to assist with his writ—a request he has unsuccessfully made on various past occasions. We have previously advised Petitioner that we are without authority to appoint appellate defense counsel, and we adhere to the reasoning underlying that advice. *See, e.g.*, *United States v. Chapman*, Misc. Dkt. No. 2012-03, 2012 CCA LEXIS 374 (A.F. Ct. Crim. App. 28 Sep. 2012) (order).

## I. BACKGROUND

In 2002, Petitioner was convicted by a general court-martial, contrary to his pleas, of attempted premeditated murder, rape, sodomy, and burglary, in violation of Articles 80, 120, 125, and 129, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 920, 925, 929. He was sentenced to a dishonorable discharge, confinement for life with the possibility of parole, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the findings and sentence as adjudged. In 2006, we affirmed the findings and sentence pursuant to our direct review authority under Article 66, UCMJ, 10 U.S.C. § 866. *United States v. Chapman*, No. ACM 35564, 2006 CCA LEXIS 179 (A.F. Ct. Crim. App. 14 Jul. 2006) (unpub. op.). The following year, the United States Court of Appeals for the Armed Forces (CAAF) summarily affirmed our decision. *United States v. Chapman*, 65 M.J. 289 (C.A.A.F. 2007). The United States Supreme Court denied certiorari. *Chapman v. United States*, 552 U.S. 952 (2007). On 28 November 2007, a final court-martial order

was promulgated, resulting in the execution of Petitioner's dishonorable discharge and rendering his case final under Articles 71(c)(1) and 76, UCMJ, 10 U.S.C. §§ 871(c)(1), 876. *Manual for Courts-Martial, United States* (2005 ed.).

While serving his sentence at the United States Disciplinary Barracks in Fort Leavenworth, Kansas, Petitioner killed another inmate with a baseball bat. He was convicted by an Army court-martial and sentenced to, *inter alia*, confinement for life without the possibility of parole. When a servicemember who is serving a period of confinement is convicted by another court-martial and sentenced to a second period of confinement, that second sentence is served immediately, interrupting the first sentence. Army Regulation 633-30/Air Force Regulation 125-30, *Military Sentences to Confinement*, ¶ 4.b.(1) (2 Dec. 2015).

In late 2014, Petitioner sought extraordinary relief from this court in the nature of a writ of habeas corpus with respect to his Air Force court-martial. He essentially asked us to order a fact-finding hearing to address the following issues: (1) whether the military judge should have sua sponte given the members an instruction on false confessions; (2) whether his trial defense counsel were ineffective with respect to their utilization of Petitioner's appointed forensic psychologist consultant; and (3) whether his appellate defense counsel were ineffective in refusing to raise an issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). This court rejected Petitioner's request in early 2016. *Chapman v. United States*, 75 M.J. 598 (A.F. Ct. Crim. App. 2016). In doing so, we determined we had no jurisdiction for the writ of habeas corpus due to the finality of his court-martial proceedings. *Id*. at 600–01. Recognizing our jurisdiction over petitions for writs of error *coram nobis*, we concluded Petitioner had failed to show he was entitled to such a writ. *Id*. at 602. Petitioner requested reconsideration, but that request was denied due to being filed late; nonetheless, we docketed his request as a new petition for relief and again concluded we were without habeas corpus jurisdiction for his case. *Chapman v. United States*, Misc. Dkt. No. 2016-07, 2016 CCA LEXIS 351 (A.F. Ct. Crim. App. 9 Jun. 2016) (unpub. op.). In our denial, we noted that "no further filings on writs of habeas corpus will be accepted or docketed by the court on this matter." *Id*. at *2. The CAAF dismissed Petitioner's appeal of our decision for lack of jurisdiction shortly thereafter. *Chapman v. United States*, No. 16-0690, 2016 CAAF LEXIS 792 (C.A.A.F. 30 Sep. 2016) (unpub. op.).

Petitioner then unsuccessfully sought relief from the federal judiciary by petitioning for a writ of habeas corpus based upon the same arguments he presented to this court. *Chapman v. Warden, FCC Coleman – USP II*, No. 5:17-cv-

40-Oc-35PRL, 2020 U.S. Dist. LEXIS 10456 (M.D. Fla. 22 Jan. 2020) (order).[1] The denial of this writ was subsequently affirmed. *Chapman v. Warden, FCC Coleman – USP II*, No. 20-10427, 2021 U.S. App. LEXIS 36588 (11th Cir. 10 Dec. 2021) (per curiam), *cert. denied sub. nom. Chapman v. Warden, FCC Coleman*, 142 S. Ct. 1696 (2022).

Petitioner now returns to this court seeking extraordinary relief in the nature of a writ of error *coram nobis* raising the same issues he previously brought.

## II. LAW

The All Writs Act, 28 U.S.C. § 1651(a), grants this court authority to issue extraordinary writs. *Loving v. United States*, 62 M.J. 235, 246 (C.A.A.F. 2005) (citing *Clinton v. Goldsmith*, 526 U.S. 529, 534 (1999)). "The writ of *coram nobis* is an ancient common-law remedy designed 'to correct errors of fact.'" *United States v. Denedo*, 556 U.S. 904, 910 (2009) (quoting *United States v. Morgan*, 346 U.S. 502, 507 (1954)). Appellate military courts have jurisdiction over petitions for *coram nobis* relief "to consider allegations that an earlier judgment of conviction was flawed in a fundamental respect." *Id.* at 917. The writ of error *coram nobis* is an extraordinary writ and an extraordinary remedy. *Id.* It should not be granted in the ordinary case; rather, it should be granted only under circumstances compelling such action to achieve justice. *Id.*; *Morgan*, 346 U.S. at 511; *Correa-Negron v. United States*, 473 F.2d 684, 685 (5th Cir. 1973). As the Supreme Court of the United States has explained, "Continuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice." *Morgan*, 346 U.S. at 511.[2] Thus, *coram nobis* is generally only available to address errors "of the most fundamental character." *Loving*, 62 M.J. at 252–53 (quoting *Morgan*, 346 U.S. at 512) (additional citations omitted).

---

[1] Petitioner was transferred to the custody of the Bureau of Prisons at some point after he killed the inmate at the United States Disciplinary Barracks. The record does not completely disclose at which federal penitentiaries Petitioner has been held.

[2] One initial question is whether we have *coram nobis* jurisdiction at all over a case which is final. The United States Court of Appeals for the Armed Forces (CAAF) recently held that once a case is final under Article 76, UCMJ, 10 U.S.C. § 876, that court has no jurisdiction to hear a petitioner's plea for *coram nobis* relief. *See United States v. Gray*. 77 M.J. 5, 6 (C.A.A.F. 2017) (per curiam). This conclusion, however, is difficult to square with the United States Supreme Court's holding in *United States v. Denedo*, 556 U.S. 904 (2009), that the military appellate courts had *coram nobis* jurisdiction

In order to be entitled to a writ of error *coram nobis*, a petitioner must meet the following threshold requirements:

> (1) the alleged error is of the most fundamental character; (2) no remedy other than *coram nobis* is available to rectify the consequences of the error; (3) valid reasons exist for not seeking relief earlier; (4) the new information presented in the petition could not have been discovered through the exercise of reasonable diligence prior to the original judgment; (5) the writ does not seek to reevaluate previously considered evidence or legal issues; and (6) the sentence has been served, but the consequences of the erroneous conviction persist.

*Denedo v. United States*, 66 M.J. 114, 126 (C.A.A.F. 2008), *aff'd*, 556 U.S. 904 (2009). Only once a petitioner meets those threshold requirements would we consider the substantive issues being raised.

### III. DISCUSSION

In our 2016 ruling concluding *coram nobis* relief was not warranted, we determined Petitioner had another remedy available (i.e., seeking relief from the federal judiciary) and pointed out that he had not yet served his sentence. *Chapman,* 75 M.J. at 602. We further noted that Petitioner had not explained why he did not raise his first issue—the instruction given by the military judge—during the direct appeal from his court-martial. *Id.*

Petitioner now argues that he no longer has any other remedy available, presumably because his petition for a writ of habeas corpus was denied by the federal courts. We agree Petitioner does not have the ability to pursue a writ of habeas corpus before us.[3] We will assume without deciding that Petitioner

over the petition before the Court. As was the case in *Gray*, the petitioner's case in *Denedo* had also been final for some time before *coram nobis* relief was sought. *See Denedo v. United States*, 66 M.J. 114, 136 (C.A.A.F. 2008) (Ryan, J., dissenting). At least one of our sister Courts of Criminal Appeals has limited the *Gray* holding to the facts of that capital case in which an execution date had been set. *See, e.g.*, *In re Trujillo*, No. 9100502, 2021 CCA LEXIS 374, at *4 n.6 (N.M. Ct. Crim. App. 28 Jul. 2021) (per curiam) (unpub. op.). We do the same and conclude we have jurisdiction over the petition at issue here.

[3] We have previously held we have no jurisdiction over habeas corpus petitions once a case is final under Articles 71(c)(1) and 76, UCMJ, 10 U.S.C. §§ 871(c)(1), 876. *United States v. Chapman*, 75 M.J. 598, 600–01 (A.F. Ct. Crim. App. 2016) (citations omitted). Article 71, UCMJ, has since been repealed, but was in effect at the time Petitioner sought direct review of his case before military courts and the Supreme Court.

no longer has the ability to seek the same relief before a district court due to the general prohibition against successive habeas corpus petitions found in 28 U.S.C. § 2244(b)(1).[4]

Petitioner also contends that the sixth threshold requirement is "too stringent and unattainable for anyone who has a life sentence," and questions whether the requirement that a petitioner seeking *coram nobis* relief must first serve his or her sentence is a correct reading of legal precedent. As noted above, the CAAF established the six-part test for establishing the availability of *coram nobis* relief in *Denedo*. Petitioner argues that case law cited by the CAAF in *Denedo* does not support a conclusion that the sentence must be served before he can be eligible for relief. This argument is not without merit.[5] Nevertheless, the CAAF is our superior court; we are bound by its precedent and have no authority to establish an alternative standard.[6] Petitioner plainly has not served the sentence he received at his 2002 Air Force court-martial, insofar as that sentence was interrupted by his subsequent Army sentence to confinement for life without the possibility of parole. Petitioner makes the related argument that he is no longer serving his Air Force sentence, but we see no reason why that would warrant a different outcome in light of the fact he will resume his Air Force sentence should he ever complete his Army sentence. Petitioner simply cannot establish that his Air Force sentence "has been served."

Even if we resolved the sixth threshold requirement in Petitioner's favor, Petitioner has failed to meet the first, third, fourth, and fifth threshold requirements for his three alleged errors.

---

[4] *But see, e.g., Loving*, 62 M.J. at 254 (noting that *coram nobis* is unavailable under federal law even if a petitioner is barred from habeas relief due to the successive-petition prohibition, so long as the petitioner remains in custody).

[5] In *Denedo*, the CAAF cited *Morgan* and *Loving* as authority for the test, along with three federal practice treatises. The Supreme Court in *Morgan*, however, never said a petitioner must first serve his or her sentence before seeking a writ of error *coram nobis*. To the contrary, the Supreme Court merely noted in *Morgan* that consequences of the petitioner's conviction may persist even though the sentence had been served, so the petitioner in that case retained the ability to challenge his conviction. 346 U.S. 502, 512–13 (1954). In *Loving*, the CAAF raised the question of whether being in custody was dispositive, but the court explicitly declined to resolve the matter. 62 M.J. at 254. The CAAF did note that the circuit courts are "in complete agreement" that *coram nobis* is not available to federal petitioners "in custody," but that is because such confined petitioners can seek relief under 28 U.S.C. § 2255—an option unavailable to servicemembers convicted by courts-martial. *Id*. at 254–55.

[6] The CAAF reiterated the rule that *coram nobis* relief is unavailable to petitioners who are still in confinement in *Gray*. 77 M.J. at 6.

**A. "False Confession" Instruction**

Petitioner contends the military judge had a sua sponte duty to instruct the members on false confessions, yet he has not precisely explained what such a novel instruction would entail, much less identify any authority requiring one. Based upon Petitioner's citation to Mil. R. Evid. 304(g), as well as his 2013 petition to this court for a writ of habeas corpus, it appears he is arguing that the military judge should have told the members "to give such weight to the confession as the jury feels it deserves under the circumstances." At the time of Petitioner's court-martial, Mil. R. Evid. 304(e)(2) (the substance of which is now found in Mil. R. Evid. 304(g)) permitted the Defense to present evidence as to the voluntariness of Petitioner's confession. The rule explained that in such a case, the military judge "shall instruct the members to give such weight to the statement as it deserves under all the circumstances." *Manual for Courts-Martial, United States* (2000 ed.).

Petitioner never raised this matter either during his trial or on direct appeal despite vigorously attacking the validity and admissibility of his confession. In fact, at his trial, the parties discussed with the military judge the question of whether the voluntariness of Petitioner's confession had been raised. Trial counsel contended no evidence of involuntariness had been presented by the Defense, and trial defense counsel did not dispute this claim. As a result, the military judge declined to give an instruction requested by the Government which was designed to counter an anticipated claim of involuntariness. Petitioner's writ presents no new information on this point which might serve to undermine the legitimacy of his court-martial. Most importantly, we cannot conclude this matter was "of the most fundamental character." Petitioner aggressively argued his confession was false at his trial, and this issue was squarely before the members. Given this posture, along with the military judge's instructions to the members to consider all the evidence in his case[7]—as well as Petitioner's inability even now to set out the parameters of the instruction he thinks the military judge should have given—we find the issue to fall far short of being "of the most fundamental character."

**B. Claim of Ineffective Assistance at Trial**

Petitioner accuses his trial defense counsel of providing ineffective assistance. Prior to his court-martial, Petitioner's defense team was appointed a forensic psychologist consultant to assist in their trial preparation. The Defense sought an additional consultant particularly versed in false confessions,

---

[7] The military judge advised the members, *inter alia*, "The final determination as to the weight or significance of the evidence and the credibility of the witnesses in this case rests solely upon you."

but this request was denied by the convening authority. The Defense made a motion to compel the appointment of such an expert, but the military judge denied it. In doing so, the military judge noted that the Defense had an assigned consultant who could advise Petitioner and trial defense counsel on the subject. Later in the trial, the Defense requested the military judge reconsider his ruling; the military judge declined to do so.

Petitioner litigated the denial of this second expert consultant on direct appeal. Before us, Petitioner does not argue this denial was error; rather he contends his trial defense counsel were ineffective in not using the assigned consultant to conduct an investigation into Petitioner's susceptibility to be swayed by "coercive" interview techniques. Petitioner's sole stated basis for concluding no investigation was done is that "no one came to interview [him]" after the military judge denied the Defense's motion to compel. Petitioner also suggests his trial defense counsel should have asked for a hearing under Article 39(a), UCMJ, 10 U.S.C. § 839(a), for the purpose of having the assigned consultant testify in order to demonstrate that the consultant was unqualified to conduct such an investigation.

Petitioner does not explain what this investigation would have entailed, nor does he explain why we should assume an assessment of his susceptibility to coercion calls for a personal interview, as opposed to a review of information assembled by the defense team. In any event, this matter was known to Petitioner at trial and readily available to him to address on appeal. Petitioner did litigate the denial of the second expert on appeal, and the argument he has presented in his habeas corpus petitions—the same argument he presents now—is simply a marginally different angle on an issue he thoroughly litigated before, during, and after his court-martial. Thus, Petitioner is seeking to reevaluate previously considered legal issues. Moreover, Petitioner has not shown any valid reason for not raising this specific claim earlier, nor has he provided any new information unavailable to him at the time of trial or during his appeal.

## C. Claim of Ineffective Assistance on Appeal

Petitioner's argument for this third alleged error is rooted in the fact that law enforcement agents reviewed his military mental health records prior to conducting the interview during which Petitioner confessed—in significant detail—to the offenses of which he was later convicted. He contends this consti-

tuted an unlawful search and seizure of the records under the Fourth Amendment.[8] Petitioner argues the agents' review enabled them to use "coercive techniques" to extract his confession, and his confession should therefore be suppressed.

Before us, Petitioner alleges that his appellate defense counsel were ineffective in not challenging agents' pre-interview review of his mental health records. The reality, however, is that this matter *was* raised during his direct appeal of his conviction. The theory the agents had impermissibly accessed his mental health records was part and parcel of Petitioner's trial efforts to suppress his confessional statements. On appeal, Petitioner alleged the military judge erred in denying his motions to suppress those statements on this same theory. Petitioner does not dispute the matter was raised, but rather contends his appellate defense counsel were ineffective because they declined to pursue a theory based upon the Fourth Amendment and instead relied on other legal bases. Petitioner alleges he asked his appellate defense counsel to brief this particular theory, but the counsel did not do so.

Petitioner aggressively litigated the admissibility of his confession on a variety of grounds at trial and on appeal. Regarding his mental health records, he specifically argued at trial that his Mil. R. Evid. 513 psychotherapist-patient privilege had been violated, and his confession should be suppressed as a result. Petitioner did not at trial or on appeal explain what information in his records was used to obtain his confession, nor has he done so in his various petitions for extraordinary relief. To the contrary, the record amply demonstrates Petitioner ceased denying he had committed his crimes and started confessing once agents told Petitioner they had video evidence of him driving off base the night of the assault, contrary to Petitioner's earlier claims that he spent the night sleeping in his car—information we would not expect to be found in his medical records. Indeed, we see nothing in the record suggesting agents leveraged any information found in his mental health records. In the military judge's ruling on the Defense's trial motion to suppress the confession, the military judge suggested Petitioner's records may have been inappropriately accessed, but he concluded there were "simply no significant indications that [Petitioner's] will was overborne by the use of the records, or anything else," and that Petitioner's statements were "inevitably discoverable even absent the mental health records." Petitioner raised this same theory about the agents' use of his mental health records in his direct appeal to this court. He raised it again before the CAAF under a theory of outrageous conduct by the agents.

---

[8] U.S. CONST. amend. IV.

Before us, Petitioner presents no new information. Instead, he simply seeks to reevaluate previously considered evidence under a different legal theory. Even if we assume Petitioner expressly asked his appellate defense counsel to make the Fourth Amendment argument on appeal, and his counsel refused to do so, Petitioner does not explain how or cite any authority for the proposition the Fourth Amendment would be implicated in the agents' review of his military medical records. Nor does he advance a legal theory which would grant him relief even in the event of a Fourth Amendment violation. Thus, we cannot conclude the alleged error of not citing the Fourth Amendment is "of the most fundamental character." Petitioner has also not explained why he could not have raised this matter earlier by, for example, requesting new appellate defense counsel during his direct appeal. No new information is presented in the petition, and Petitioner admits he understood the issue while his direct appeal was ongoing.

Based on the foregoing, we conclude Petitioner has not carried his burden to demonstrate that his case warrants extraordinary relief in the form of a writ of error *coram nobis*.

Accordingly, it is by the court on this 16th day of August, 2022,

**ORDERED:**

The Petition for Extraordinary Relief in the Nature of a Writ of Error *Coram Nobis*, is **DENIED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court