OPINION
WALLACE, Senior Circuit Judge:
Gary Ozenne appeals from the Ninth Circuit bankruptcy appellate panel’s (BAP) denial of his petition for a writ of mandamus. Because the BAP is not a “court[ ] established by Act of Congress” under the A1 Writs Act, 28 U.S.C. § 1651(a), we hold that the BAP did not have jurisdiction to consider the petition.
I.
Several years after his bankruptcy case was closed, Ozenne filed a motion for sanctions in the bankruptcy court. [Bankr. Ct. Dkt. No. Ill] The bankruptcy court ruled that it lacked jurisdiction to grant relief [Id. No. 119] and Ozenne filed a petition for writ of mandamus before the BAP [BAP Dkt. 1]. Relying on its previous decision In re Salter, 279 B.R. 278 (B.A.P. 9th Cir.2002), the BAP held that it had jurisdiction pursuant to 28 U.S.C. § 1651 to consider the petition, and then denied the petition. [Id. No. 4] Ozenne appealed from that denial. [Id. No. 6],
II.
Athough the question of whether the BAP has jurisdiction to address a petition for a writ of mandamus has not been raised on appeal, we are “bound to consider jurisdictional defects sua sponte.” United States v. S. Pac. Transp. Co., 543 F.2d 676, 682 (9th Cir.1976). The BAP cited subsection (a) of the A1 Writs Act as the source of its authority to decide a writ of mandamus. Subsection (a) states that “[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.” 28 U.S.C. § 1651(a).
The question therefore is whether the BAP is one of the “courts established by Act of Congress.” We conclude that the answer is no.
A.
The statute authorizing the BAP answers the question. The BAP was not established by an “Act of Congress”; rather, Congress gave the judicial council of each circuit discretion to establish a bankruptcy appellate panel service.
The statute authorizing the creation of the BAP states that
[t]he judicial council of a circuit shall establish a bankruptcy appellate panel *516 service composed of bankruptcy judges ,.. appointed by the judicial council ... to hear and determine, with the consent of all the parties, appeals [from certain final judgments, orders, and decrees of bankruptcy judges] unless the judicial council finds that—
(A) there are insufficient judicial resources available in the circuit; or
(B) establishment of such a service would result in undue delay or increased cost to parties in [bankruptcy cases].
28 U.S.C. § 158(b)(1). The statute does not simply mandate that the judicial council establish a BAP. Instead, a circuit’s judicial council may establish a BAP based on its assessment of the judicial resources available in the circuit and whether the service would cause undue delay or increased cost to the parties. 28 U.S.C. § 158(b)(l)(A)-(B). In addition, the BAP continues only so long as the Judicial Council of the Circuit wishes it to. 28 U.S.C. § 158(b)(2). The BAP is, in effect, a temporary panel to be used only so long as the judicial council chooses to keep it operational. BAP membership is also on a temporary basis, as it is staffed by bankruptcy judges who serve by request, in addition to their assigned role as bankruptcy judges. 28 U.S.C. § 158(b); Judicial Council of the Ninth Circuit, “Amended Order Continuing the Bankruptcy Appellate Panel of the Ninth Circuit” (effective November 18, 1988; as amended May 4, 2010), pg. 3. It has none of the permanency of a court.
Pursuant to congressional authorization, the Judicial Council of the Ninth Circuit established a BAP and has continued the BAP’s service from time to time since then. See Judicial Council of the Ninth Circuit, “Amended Order Continuing the Bankruptcy Appellate Panel of the Ninth Circuit.” Because the BAP is a panel service established by the Judicial Council of the Ninth Circuit, not a “court established by Act of Congress,” it does not have writ power under the All Writs Act.[1] Indeed, its “service” status is demonstrated by the authority of the Judicial Council of the Ninth Circuit to terminate the BAP at any time.
B.
The BAP itself previously concluded it had mandamus power in In re Salter, but it was incorrect. In re Cardelucci, 285 F.3d 1231, 1234 (9th Cir.2002) (concluding that “this Court is not bound by a[BAP] decision”). In reaching its conclusion, the BAP first considered various dictionary definitions of the word “establish,” such as ‘“[t]o set up on a secure or permanent basis; to found,’ ” and “ ‘to bring into existence.’” In re Salter, 279 B.R. at 281, quoting Oxford English Dictionary Online and Webster’s New Collegiate Dictionary 391 (1975). The BAP concluded that under such definitions “Congress could be said to have ‘established’ BAPs ... because BAPs did not exist until Congress provided the authority for them.” Id.
Although the definitions used by the BAP do not differ meaningfully from definitions in current legal sources, see, e.g., Black’s Law Dictionary (10th ed. 2014) (defining “establish” as “[t]o make or form; to bring about or into existence”), the BAP’s application of these definitions stretches the meaning of “established” too far, since under its logic any tribunal whose existence is logically dependent in some way upon action by Congress (including any tribunal that receives any kind of federal *517 funding or authorization) could be empowered under the All Writs Act. The most obvious meaning of the phrase “established by Act of Congress” is that it covers those entities directly created by a Congressional Act, such as the United States Court of Appeals for Veterans Claims. See Veterans for Common Sense v. Shinseki, 678 F.3d 1013, 1022 (9th Cir.2012) (“The Veterans Court also has authority under the All Writs Act to issue ‘writs necessary or appropriate in aid of [its] jurisdiction [].’”); cf 38 U.S.C. § 7251 (“There is hereby established, under Article I of the Constitution of the United States, a court of record to be known as the United States Court of Appeals for Veterans Claims”). The phrase may even be broad enough to include entities created by a third party at the express direction of Congress. Compare United States v. Draughon, 42 C.M.R. 447, 1970 WL 7129 (1970) with Combest v. Bender, 43 C.M.R. 899, 1971 WL 12909 (1971).
However, a tribunal created by the independent actions, choices, or judgment of a third party has not been “established by Act of Congress,” even if authorization or support from Congress was a logically necessary part of the tribunal’s creation (such as a Judicial Council of the Circuit). Thus, since the BAP was created by the Judicial Council of the Ninth Circuit based on its own independent decision and action, the BAP was not “established by Act of Congress” even though a Congressional Act first suggested and authorized its creation.
The BAP in In re Salter also reasoned that it possessed writ power because the purpose of the All Writs Act was to give federal courts the power to issue writs in aid of their jurisdiction, and since “Congress ... has given [the BAP] general appellate powers over appeals from orders and judgments of bankruptcy courts” and “[n]othing in 28 U.S.C. § 158 limits the powers implied from the fact of the BAPs’ creation as an appellate tribunal,” the BAP’s powers “must include the traditional power to issue writs that aid in their jurisdiction.” 279 B.R. at 282. This line of reasoning, however, ignores the BAP’s limited jurisdiction.
The BAP could only exercise power under the All Writs Act insofar as it is “in aid of’ the BAP’s existing jurisdiction because the All Writs Act does not confer an independent source of jurisdiction. 28 U.S.C. § 1651(a); see, e.g., United States v. Denedo, 556 U.S. 904, 914, 129 S.Ct. 2213, 173 L.Ed.2d 1235 (2009), citing Clinton v. Goldsmith, 526 U.S. 529, 534-35, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999) (“[T]he All Writs Act and the extraordinary relief the statute authorizes are not a source of subject-matter jurisdiction”).
The BAP’s jurisdiction is contingent upon parties’ consent. 28 U.S.C. § 158(b)(1) enshrines this consent requirement, stating the BAP service will “hear and determine, with the consent of all the parties, appeals” from final judgments, orders, and decrees. Section 158(c)(1) specifies how parties express their consent (or lack thereof) to the BAP’s jurisdiction. While the default position is that appeals from the bankruptcy court proceed to the BAP,, section 158(c)(1) provides both appellants and appellees the opportunity to “opt-out” of having the BAP hear their case. 28 U.S.C. § 158(c)(1) states:
Subject to subsections (b) and (d)(2), each appeal under subsection (a) shall be heard by a 3-judge panel of the bankruptcy appellate panel service established under subsection (b)(1) unless—
(A) the appellant elects at the time of filing the appeal; or
*518 (B) any other party elects, not later than 30 days after service of notice of the appeal;
to have such appeal heard by the district court.
Under the statute, appellants can choose to have the district court hear their appeal. Otherwise, when appellants appeal to the BAP, a notice of appeal issues and a 30-day time period is triggered in which ap-pellees can choose to have the district court hear the case.
Petitions brought under the All Writs Act, however, do not require the consent of the opposing party, which would allow one party to bring unilaterally its case before the BAP. Petitions for writ of mandamus do not trigger a notice of appeal and election period, and appellees, as a result, never have the opportunity to elect to have the district court hear their case.
The situation in this case is instructive. Here, Ozenne failed to file a timely notice of appeal pursuant to Rule 8003(a) of the Federal Rules of Bankruptcy Procedure. Ozenne’s failure to appeal the bankruptcy court’s decision meant that the election period was never triggered, and the defendant never had the opportunity to elect to have the district court hear the case. Thus, the BAP’s decision to review the petition for writ of mandamus, even though it was ultimately denied, was not “in aid of’ its jurisdiction.
Finally, the BAP reasoned that since the Court of Criminal Appeals (formerly known as the Court of Military Review) was created using similar statutory language to that used in connection with the creation of the BAP, and since the Court of Military Appeals concluded that the Court of Criminal Appeals was a court created by Congress in Dettinger v. United States, 7 M.J. 216, 219 (C.M.A.1979), the BAP should also be considered a court created by Congress under the same reasoning. In re Salter, 279 B.R. at 282-83. However, the statutory language under which the Court of Criminal Appeals was created differs significantly from the statutory language under which the BAP was created: the former states in relevant part that “[ejach Judge Advocate General shall establish a Court of Criminal Appeals,” 10 U.S.C. § 866(a), while the latter states in relevant part that “(t]he judicial council of a circuit shall establish a bankruptcy appellate panel service ... unless the judicial council finds that: (A) there are insufficient judicial resources available in the circuit; or (B) establishment of such service would result in undue delay or increased cost to parties in cases under title 11,” 28 U.S.C. § 158(b)(1) (emphasis added). The former language allows a Judge Advocate General no discretion in determining whether to establish a Court of Criminal Appeals, lending credence to the conclusion of the Court of Military Appeals that the All Writs Act covers the Court of Criminal Appeals. In contrast, a Judicial Council of the Circuit must decide whether to establish a bankruptcy appellate panel service based on its own assessment of judicial resources and costs. This distinction makes all the difference in determining whether, under the All Writs Act, a tribunal was established by Congress itself — either directly or by mandatory delegation — or instead by a third party (such as the Judicial Council of the Circuit) at its own discretion. Moreover, it is clear that in the former Congress was creating a permanent court with permanent judges, while in the latter the panel services was temporary, as the Judicial Council of the Circuit could terminate the panel service at any time, and the judges were not permanent but served for a limited time and served in addition to the official assignment as a bankruptcy judge.
*519 C.
The dissent contends that our opinion neuters the BAP. The dissent ignores the BAP’s historically subordinate role within the federal judiciary, and the constitutional issues that would arise should the BAP be afforded power under the All Writs Act.
While Congress may create certain federal tribunals pursuant to its constitutionally delegáted powers in Article I, its authority to do so is not plenary. N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 63-64, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (plurality). Article III of the Constitution provides that “[t]he judicial Power of the United States” shall be exercised by judges who “hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.” U.S. Const, art. Ill, § 1. Congress cannot diminish the judicial branch’s power by granting jurisdiction to Article I tribunals over cases that are within the “judicial power of the United States” as described in Article III, and, similarly, cannot “vest[] all ‘essential attributes’ of the judicial power of the United States” in an adjunct court shielded from proper review by an Article III court. N. Pipeline, 458 U.S. at 63-64, 84-87, 102 S.Ct. 2858 (plurality). To allow Congress to do so undermines “the checks and balances ... built into the tripartite government,” as well as the “guarantee that the process of adjudication itself remain[ ] impartial,” because the federal judiciary would no longer “stand independent” of the Legislature. Id. at 57-58, 102 S.Ct. 2858 (plurality).
Guided by these principles, the Supreme Court in Northern Pipeline struck down Congress’s broad grant of authority to the bankruptcy courts under the Bankruptcy Reform Act of 1978. Id. at 87, 102 S.Ct. 2858 (plurality). The four-justice plurality reasoned that bankruptcy courts under the 1978 Act unconstitutionally exercised jurisdiction over cases within the purview of Article III courts, and were not subject to sufficient scrutiny by Article III courts. Id. at 83-87, 102 S.Ct. 2858 (plurality). A full majority of the court, although failing to agree on the scope of the “public rights” exception that allows Congress to assign a narrow category of cases to Article I legislative courts, concluded that the Act vested all “essential attributes” of the judicial power in the bankruptcy courts, and the courts were therefore not constitutionally acceptable adjuncts. Id. at 69-71, 85-86, 102 S.Ct. 2858 (plurality); see id. at 91,102 S.Ct. 2858 (Rehnquist, J., concurring).
In In re Burley, decided a few months after the Supreme Court’s decision in Northern Pipeline, our court addressed the BAP’s constitutionality in light of Northern Pipeline. 738 F.2d 981, 985-87 (9th Cir.1984), Our court concluded that the BAP, unlike the bankruptcy courts under the 1978 Act, was constitutional. Id. at 985. In reaching that conclusion, our court emphasized that the Article III court of appeals retained the “essential attributes of the judicial power.” Id. at 985. Our court retains that power because we can effectively review the BAP’s decisions de novo, have the authority to render final decisions, and exercise “control over the BAP in that the BAP can be established only by order of the circuit council.” Id.
After the decision in In re Burley, Congress passed two more acts affecting the establishment of BAPs. In 1984 Congress passed the “Bankruptcy Amendments and Federal Judgment Act of 1984,” Pub.L. No. 98-353S 104(a), 98 Stat. 341 (1984), followed by an amendment to the bankruptcy appeals statute in 1994, 28 U.S.C. § 158.
*520 28 U.S.C. § 158, while enabling the increased use of BAPs among the circuits, still limits the BAP’s role within the federal judiciary. Id.; Jonathan Remy Nash & Rafael I. Pardo, An Empirical Investigation into Appellate Stmcture and the Perceived Quality of Appellate Review, 61 Vand. L.Rev. 1745, 1757 (2008). Primarily, the 1994 amendments did not erase each circuit’s discretion in establishing a BAP. 28 U.S.C. § 158(b)(1). Moreover, the BAP does not have authority to hear bankrupt cy appeals “unless the district judges for the district in which the appealf ] occur[s], by majority vote, have authorized [the BAP] to hear and determine appeals originating in such district.” 28 U.S.C. § 158(b)(2)(6).
The BAP also does not retain its own permanent set of judges. Instead, the BAP is staffed by a rotating set of bankruptcy judges who are appointed at the behest of the judges of the Court of Appeals of the United States for the circuit in which the bankruptcy court is located, and removed at the behest of the Judicial Council of the Circuit. 28 U.S.C. § 152(a), (e); Judicial Council of the Ninth Circuit, “Amended Order Continuing the Bankruptcy Appellate Panel of the Ninth Circuit.” The rotating set of judges has narrow jurisdiction to hear appeals from the bankruptcy court. Again, the BAP only has jurisdiction to “hear and determine, with the consent of all the parties, appeals” from final judgments, orders, and decrees from the bankruptcy court. 28 U.S.C. § 158(b)(1).
The BAP’s limited jurisdiction is identified by Congress’s treatment of the BAP as a “panel service.” 28 U.S.C. § 158(b)(1) (“The judicial council of a circuit shall establish a bankruptcy appellate panel service— ”) (emphasis added). While the dissent would have this court deviate from the statute’s plain language and grant the BAP powers as though Congress had established the BAP as something other than a panel service, there is no reason to do so. Had Congress intended for the BAP to exercise authority beyond its prescribed role as a panel service, it would have provided for it in the BAP’s authorizing statute. Compare 28 U.S.C. § 158(b)(1) with 10 U.S.C.A § 941 (“There is a court of record known as the United States Court of Appeals for the Armed Forces. The court is established under Article I of the Constitution”), and 38 U.S.C.A § 7251 (“There is hereby established, under Article I of the Constitution of the United States, a court of record to be known as the United States Court of Appeals for Veterans Claims”), and 28 U.S.C. § 171 (“The president shall appoint ... sixteen judges who shall constitute a court of record known as the United States Court of Federal Claims. The Court is declared to be a court established under article I of the Constitution of the United States”).
Our court, recognizing the BAP’s narrow jurisdiction, has even concluded that the BAP’s decisions are not binding. In re Silverman, 616 F.3d 1001, 1005 n. 1 (9th Cir.2010) (“[W]e treat the BAP’s decisions as persuasive authority given its special expertise in bankruptcy issues”) (emphasis added); In re Cardelucci, 285 F.3d at 1234 (“[T]his Court is not bound by a[BAP] decision”); Bank of Maui v. Estate Analysis, Inc., 904 F.2d 470, 472 (9th Cir.1990) (“[I]t must be conceded that BAP decisions cannot bind the district courts themselves. As article III courts, the district courts must always be free to decline to follow BAP decisions and to formulate their own rules within their jurisdiction”).
The BAP’s subordinate role within the federal judiciary is pertinent to our decision. Supreme Court and our court’s precedents emphasize that the BAP derives its legitimacy from the overview ex *521 ercised by Article III courts, as well as the BAP’s inability to infringe upon “the essential attributes of judicial power.” N. Pipeline, 458 U.S. at 86-87, 102 S.Ct. 2858; In re Burley, 738 F.2d at 985-87. Even though the barriers to Article III review the BAP would create by having authority under the All Writs Act “seem innocuous at first blush,” they nevertheless “chip away at the authority of the Judicial Branch.” Stern v. Marshall, 564 U.S. 462, 131 S.Ct. 2594, 2620, 180 L.Ed.2d 475 (2011); see also id., quoting Reid v. Covert, 354 U.S. 1, 39, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957) (plurality opinion) (“A statute may no more lawfully chip away at the authority of the judicial branch than it may eliminate it entirely. ‘Slight encroachments create new boundaries from which legions of power can seek new territory to capture’”). First, allowing the BAP to entertain writs of mandamus would circumvent the consent requirement in 28 U.S.C. § 158(c)(1), effectively preventing a party from seeking review of the dispute by an Article III district judge as allowed by statute. Second, such authority would frustrate our court’s appellate review by putting in place an extra procedural hurdle that respondents would have to surmount in order to receive review. See Fed. R.App. P. 21; Ninth Circuit R. 27-1 “Advisory Committee Note”.
The dissent nevertheless contends that the constitutional issue raised by our decision is Congress’s unconstitutional delegation of authority to the judicial branch. The dissent argues that by allowing the Judicial Council of the Ninth Circuit established the BAP, Congress has impermissi-bly delegated its court-making authority to the courts. First, Congress did not delegate BAP establishment to the courts — it was delegated to an administrative authority, the Judicial Council of the Circuits. The dissent repeatedly misses this important distinction. It argues Congress gave the power to create the BAP to the court. But this argument is irrelevant. Clearly, this was an administrative responsibility given to an administrative part of our system: the Judicial Council of the Circuits. Second, because it is a temporary entity existing at the option of the Judicial Council of the Circuit, it does not have the same function or power of a court — thus its name as a “panel” created or disbanded by the Judicial Council of the Circuit.
The Supreme Court, in addressing separation-of-powers concerns in cases involving the judicial branch, has explained that there are “two dangers: first, that the Judicial Branch neither be assigned nor allowed tasks that are more properly accomplished by [other] branches, and second, that no provision of law impermissibly threatens the institutional integrity of the Judicial Branch.” Mistretta v. United States, 488 U.S. 361, 383, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (internal quotations and citations omitted). Our decision does not raise either concern. Congress has not simply delegated all court-making authority to the judicial councils of each circuit. Rather, Congress has allowed judicial councils to take stock of the needs within their circuit, and, based on those conclusions, to establish a panel service that is limited in both the subject matter it can adjudicate and its authority to render final decisions. The authorization continues only so long as the Judicial Council of the Circuit on its own decides. 28 U.S.C. § 158(b)(2). The Supreme Court has never held, nor has our court, that Congress cannot authorize the judicial councils in each circuit to establish a temporary panel service to adjudicate specific, public rights, such as bankruptcy claims. See Stern, 131 S.Ct. at 2609-11 (defining “public rights”).
III.
We therefore overrule In re Salter and hold that the BAP is not a “court[ ] estab *522 lished by Act of Congress” under subsection (a) of the All Writs Act, so it does not have jurisdiction to entertain a mandamus petition. Our decision does not leave parties without recourse to mandamus relief from decisions by a bankruptcy judge, since subsection (a) of the All Writs Act applies to federal district courts. Sec., & Exch. Comm’n v. G.C. George Secs., Inc., 637 F.2d 685, 688 (9th Cir.1981) (holding that “the district court ... had the authority to consider [petitioner’s] request for relief under the All Writs Act,” and observing that “a district court’s powers under § 1651 should be broadly construed” (internal quotation marks omitted)).
We vacate the decision of the BAP and remand the case with instructions to dismiss the petition for lack of jurisdiction. Parties shall bear their own costs for the appeal. Fed. R.App. P. 34(a)(4).
VACATED AND REMANDED.

. Our dissenting colleague asserts the majority is willing to consider the BAP a court. Not so. Congress knows full well how to the spell the word "court” and we respect that difference and should interpret the meaning of the statute as it has been written.