*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HUTCHISON, TANG, and LAWRENCE,
Appellate Military Judges

_____

**Michael J. BROWN**
First Sergeant (E-8), U.S. Marine Corps
**Petitioner**

v.

**UNITED STATES**
Respondent

**No. 201900050**

Decided: 27 June 2019.

Review of Petition for Extraordinary Relief in the Nature of a Writ of Mandamus and Writ of Prohibition. Military Judge: Lieutenant Colonel Roger E. Mattioli, USMC. Sentence adjudged 5 March 2018 by a special court-martial convened at Marine Corps Base Quantico, Virginia, consisting of officer and enlisted members: reduction to E-7.[1]

For Appellant: Lieutenant Michael W. Wester, JAGC, USN.

For Appellee: Major Kelli A. Oneil, USMC; Captain Luke Huisenga, USMC.

Senior Judge HUTCHISON delivered the opinion of the Court, in which Senior Judge TANG joined. Judge LAWRENCE filed a separate dissenting opinion.

_____

[1] The convening authority has not yet taken action on the sentence.

**PUBLISHED OPINION OF THE COURT**

_____

HUTCHISON, Senior Judge:

Following his conviction at special court-martial, but prior to the convening authority's action, the petitioner seeks extraordinary relief from this court in the nature of a writ of mandamus or a writ of prohibition. Specifically, the petitioner requests that we remove the military judge or grant a mistrial. Alternatively, the petitioner requests that we "appoint a special master to investigate allegations of unlawful command influence."[2] We granted the petitioner's request to stay his court-martial proceedings and directed the petitioner to specifically brief whether this court had jurisdiction to entertain his extraordinary writ.[3] Having considered the petitioner's prayer for relief, his brief on the jurisdictional question, and the government's response, we conclude that we have jurisdiction to entertain the petitioner's writ, but that the petitioner has not demonstrated a clear and indisputable right to the relief requested. Accordingly, the petition is denied.

## I. BACKGROUND

A panel of officer and enlisted members sitting as a special court-martial convicted the petitioner of abusive sexual contact and disorderly conduct and sentenced him to be reduced to paygrade E-7. Prior to acting on the sentence, the convening authority granted the petitioner's request to convene a post-trial hearing pursuant to Article 39(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 839(a) (2012), to address legal errors raised by the petitioner in his clemency request. Specifically, the convening authority directed the military judge to address: (1) whether he properly declined to provide a mistake of fact instruction; (2) whether he properly prohibited the petitioner from presenting evidence of the petitioner's character for truthfulness; and (3) whether he properly prohibited the petitioner from rehabilitating a witness' character for truthfulness.

At the Article 39(a), UCMJ, hearing the petitioner moved to disqualify the military judge for bias or the appearance of bias. In support of his motion, the petitioner conducted a voir dire of the military judge and called the court re-

---

[2] Petition for Extraordinary Relief of 28 Feb 19 at 3-4.

[3] *See* NMCCA Order of 6 Mar 19.

porter to testify that the judge seemed antagonistic towards petitioner's counsel. The military judge denied the motion to recuse and further denied oral argument on the issues certified by the convening authority. Instead, the military judge stated he would review the entire record, including the briefs of the parties, to address the issues. Before the military judge ruled, the petition filed his extraordinary writ with our court.

## II. DISCUSSION

### A. Jurisdiction

The All Writs Act states that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. 1651(a). *See also United States v. Denedo*, 556 U.S. 904, 911 (2009); RULE FOR COURTS-MARTIAL (R.C.M.) 1203(b), Discussion, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.). "[M]ilitary courts, like Article III tribunals, are empowered to issue extraordinary writs under the All Writs Act." *LRM v. Kastenberg*, 72 M.J. 364, 367 (C.A.A.F. 2013) (quoting *Denedo*, 556 U.S. at 911) (alteration in original). However, the All Writs Act does not serve as "an independent grant of jurisdiction, nor does it expand [our] existing statutory jurisdiction." *Id.* (citing *Clinton v. Goldsmith*, 526 U.S. 529, 534-35 (1999)). Thus, in order to grant the petitioner's prayer for relief, the All Writs Act requires that the requested writ be "*in aid of* the issuing court's jurisdiction." *Goldsmith*, 526 U.S. at 534 (emphasis added).

"The courts of criminal appeals are courts of limited jurisdiction, defined entirely by statute." *United States v. Arness*, 74 M.J. 441, 442 (C.A.A.F. 2015). Our limited jurisdiction—relevant to the petitioner's writ—is defined by two statutes, Articles 66 and 69, UCMJ. Article 66(b)(1), UCMJ, requires this court to review the record in each trial "in which the sentence, as approved, extends to death, dismissal of a commissioned officer, cadet, or midshipman, dishonorable or bad-conduct discharge, or confinement for one year or more."

Those cases tried at *general court-martial* receiving a sentence not meeting the minimum requirements for mandatory review under Article 66, UCMJ, "shall be examined in the office of the Judge Advocate General." Article 69(a). However, those cases not reviewed by this court pursuant to Article 66, UCMJ, or by the Judge Advocate General (JAG) pursuant to Article 69(a), UCMJ, can still be reviewed, "upon application of the accused" to the JAG for *inter alia*, "error prejudicial to the substantial rights of the accused." Article 69(b).

Once a case is subject to review by the JAG—whether through automatic review pursuant to Article 69(a), UCMJ, or upon application of the accused pursuant to Article 69(b), UCMJ—the JAG may refer the case to the court of criminal appeals (CCA). Specifically, Article 69(d), UCMJ, provides that the CCA may review, under Article 66, UCMJ:

> (1) any court-martial case which
>
>> (A) is subject to action by the Judge Advocate General under [§ 869], and
>>
>> (B) is sent to the Court of Criminal Appeals by order of the Judge Advocate General; and
>
> (2) any action taken by the Judge Advocate General under this section in such case.

In *Arness*, the Court of Appeals for the Armed Forces (CAAF) explained that Article 69(d) does not grant a CCA the authority to review "every case which is subject to action by the [JAG] pursuant to Article 69. Instead, it grants the CCA authority to review any action taken by the [JAG] . . . that the [JAG] elects to refer to the CCA." 74 M.J. at 443. Thus, referral by the JAG to the CCA is "a statutory prerequisite" for a CCA's review. *Id.* Applying this reading of Article 69(d), UCMJ, the CAAF rejected Arness' Petition for writ of error *coram nobis*. Lieutenant Colonel Arness had been convicted at general court-martial of several specifications of absenting himself without authority, false official statements, and conduct unbecoming an officer. He was sentenced to 11 months' confinement and a reprimand. The Air Force JAG completed review under Article 69(a) and "determined that the findings and sentence were supported in law, and elected not to send the case to the CCA for review under Article 69(d)." *Id.* at 442. Since the JAG did not refer the case to the CCA, the CAAF held that "[c]onsideration of extraordinary relief [was] not 'in aid' of the CCA's jurisdiction, because the CCA had none in the first place." *Id.* at 443.

Here, the petitioner was sentenced to only a reduction in grade at a special court-martial. As a result, he is not entitled to a mandatory review by this court pursuant to Article 66, UCMJ, nor to review by the JAG pursuant to Article 69(a), UCMJ. Rather, the petitioner is entitled to a review by a judge advocate pursuant to Article 64, UCMJ, and may seek review from the JAG, pursuant to Article 69(b), UCMJ. But because the case is not yet final, the petitioner has not yet had the opportunity to seek review by the JAG, and the JAG, of course, has not yet had the opportunity to refer the case to our court pursuant to Article 69(d). In this regard, the appellant's case is distinct from *Arness*. The question is whether this distinction makes any difference when it comes to our jurisdiction. We conclude that it does.

The CAAF's holding in *Arness* dealt specifically with a writ of error *coram nobis.* As the Supreme Court made clear in *Denedo*, an "application for the writ [of error *coram nobis*] is properly viewed as a belated extension of the original proceeding during which the error allegedly transpired." *Denedo*, 556 U.S. at 913. Since the Air Force JAG never referred Arness' case to the CCA, the CCA *never had jurisdiction* of Arness' case. Thus, *Arness* simply stands for the unsurprising proposition that a CCA may not extend jurisdiction it never had.

The petitioner is not seeking a writ of error *coram nobis*, but rather a writ of mandamus or prohibition. As a result, he does not rely on an "extension of the original proceeding" for jurisdiction. *Denedo*, 556 U.S. at 913. Rather, our jurisdiction to entertain the petitioner's writ is found in the doctrine of potential jurisdiction. *See FTC v. Dean Foods Co.*, 384 U.S. 597, 603 (1966) (finding that the power to issue writs "extends to the potential jurisdiction of the appellate court where an appeal is not then pending but may be later perfected"). The CAAF did not address potential jurisdiction in *Arness*.

In *Howell v. United States*, 75 M.J. 386 (C.A.A.F. 2016)—decided after *Arness*—the CAAF held that we had jurisdiction under the All Writs Act to hear a government writ of prohibition even though the convening authority had not yet approved the adjudged sentence. The CAAF explained that "the doctrine of *potential jurisdiction* allows appellate courts to issue opinions in matters that may reach the actual jurisdiction of the court." *Howell*, 75 M.J. at 397 n.4 (citing *Dean Foods Co.,* 384 U.S. at 603) (emphasis added). There are, of course, obvious differences between *Howell* and the petitioner's case. Howell's adjudged, but not yet approved, sentence included a dishonorable discharge and nine years' confinement, thus qualifying for direct review by our court under Article 66, UCMJ. *See also Seeto v. Levy*, No. 2016-15, 2017 CCA LEXIS 136, at *4 (A.F. Ct. Crim. App. 22 Feb. 2017) (unpub. op.) ("Given Petitioner's adjudged sentence is within this court's jurisdictional mandate under Article 66, UCMJ, and may be referred for direct review, we find the writs submitted in this case are 'in aid of' our jurisdiction under the All Writs Act."). The petitioner's sentence included only a reduction in grade, and as mentioned previously, triggers neither automatic review by our court nor the JAG.

Further, while the convening authority has directed that the military judge answer the legal errors raised by the petitioner in his clemency request, nothing the military judge does, and nothing the convening authority can do at this stage of the proceedings, will bring the petitioner's sentence within the ambit of our Article 66, UCMJ, jurisdiction. Rather, the only way for this court to gain jurisdiction over the petitioner's case is for the JAG to refer the case to our court pursuant to Article 69(d), UCMJ.

But we do not think these differences extinguish our potential jurisdiction here. First, like the petitioner's prayer for relief, the government's writ in *Howell* was a writ of prohibition, not a writ of error *coram nobis* that would require us to extend jurisdiction we have never had. Second, and more importantly, the CAAF, citing Supreme Court precedent, explained that our potential jurisdiction exists where "matters . . . *may reach* the actual jurisdiction" of our court. *Howell*, 75 M.J. at 397 n.4 (emphasis added). Simply put, the petitioner's case *may* yet reach our court. That was not the case in *Arness*. That there are still prerequisites—application by the petitioner and referral by the JAG—that must be satisfied before we have "actual jurisdiction" does not matter and did not matter to the CAAF in *Howell*.

In *Howell*, although the adjudged sentence would have triggered automatic review by our court pursuant to Article 66, UCMJ, the CA had not yet approved the findings or the sentence. *See Howell*, 75 M.J. at 389. Our court's jurisdiction under Article 66(b), UCMJ, is based on the sentence "as approved" by the CA. 10 U.S.C. § 866(b) (1996). Based on the date of Howell's offenses, the CA had the "clear unfettered discretion . . . to modify the findings and sentence."[4] *United States v. Nerad*, 69 M.J. 138, 145 (C.A.A.F. 2010). Therefore, in order for this court to have had actual jurisdiction over Howell's case, the CA would have had to approve a sentence triggering our review, which he may or may not have done in the exercise of his "command prerogative." *Id.*; *see also* Article 60(c)(1), UCMJ (2006). This prerequisite is not unlike the prerequisite for our actual jurisdiction in the petitioner's case. In both instances, the matters "*may reach* the actual jurisdiction of the court." *Howell*, 75 M.J. at 390 n.4 (emphasis added).

We are also guided by the CAAF's decision in *Hasan v. Gross*, 71 M.J. 416 (C.A.A.F. 2012). There, the CAAF granted the petitioner's writ of mandamus—filed prior to the start of his trial—and removed the military judge "on the basis of the appearance of bias." *Id.* at 417. The court did not discuss jurisdiction in their opinion, but later explained their basis for finding jurisdic-

---

[4] *See* Article 60(c)(1), UCMJ, 10 U.S.C. § 860(c)(1) (2013) ("The authority under this section to modify the findings and sentence of a court-martial is a matter of command prerogative involving the sole discretion of the convening authority."). The National Defense Authorization Act for Fiscal Year 2014, Pub. L. No. 113-66, 127 Stat. 672 (2013), amended Article 60(c)(4), UCMJ, and restricted the CA's authority to modify sentences for all but the most minor offenses committed on or after 24 June 2014. Specifically, the changes to Article 60(c)(4), UCMJ, prohibit CAs from "disapprov[ing], commut[ing], or suspend[ing] in whole or in part an adjudged sentence of confinement for more than six months or a sentence of dismissal, dishonorable discharge, or bad conduct discharge" unless certain exceptions exist.

tion was premised on the fact that the "harm alleged by the petitioner—that the military judge was biased—had the potential to directly affect the findings and sentence." *Ctr. for Constitutional Rights v. United States*, 72 M.J. 126, 129 (C.A.A.F. 2013). In *Ctr. for Constitutional Rights*, the petitioner sought public access to documents filed in a high-profile court-martial. *Id.* at 127. The CAAF rejected the petitioner's potential jurisdiction claims, distinguishing it from *Hasan*, because the court was being asked "to adjudicate what amounts to a civil action, maintained by persons who are strangers to the court-martial" that had "no bearing on any findings and sentence that may eventually be adjudged by the court-martial." *Id. at* 129. Thus, a "writ petition may be 'in aid of' a court's jurisdiction even on interlocutory matters where no finding or sentence has been entered in the court-martial." *Kastenberg*, 72 M.J. at 368 (citations omitted). "To establish subject-matter jurisdiction, the harm alleged must have had 'the potential to directly affect the findings and sentence.'" *Id.* (quoting *Ctr. for Constitutional Rights*, 72 M.J. at 129).

Here, the harm alleged—a biased military judge—is the same harm alleged in *Hasan*, and has the potential to directly affect the findings and sentence. The fact that the court-martial has arrived at findings and a sentence does not change this analysis. Pursuant to R.C.M. 1102, the CA directed a post-trial Article 39(a) session "to reconsider . . . trial ruling[s] that substantially affect[ ] the legal sufficiency of any findings of guilty or the sentence." R.C.M. 1102(b)(2). If the military judge were to reconsider those rulings for which the CA specifically directed the post-trial Article 39(a) session, the findings and sentence could be affected.

Because the petitioner's case may still reach this court, and the alleged harm has the potential to directly affect the findings and sentence, we conclude we have potential jurisdiction to entertain the petitioner's writ.

**B. Merits of Petitioner's Writ**

*1. Standard of review*

A writ of mandamus is "a drastic instrument which should be invoked only in truly extraordinary situations." *United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983) (citations omitted). The writ has traditionally been used "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Association*, 319 U.S. 21, 26 (1943). Only exceptional circumstances amounting to a "clear abuse of discretion or usurpation of judicial power" justify the invocation of the writ. *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 383 (1953) (citation and internal quotation marks omitted). Therefore, to prevail, a petitioner seeking an extraordinary writ must

show that: "(1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances." *Hasan*, 71 M.J. at 418 (citing *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004)).

As an initial matter, we note that in addition to asking this court for a writ of mandamus disqualifying the military judge, the petitioner also seeks relief for the substantive issues he raised in clemency and which are currently pending before the military judge in the post-trial Article 39(a) session. In addition, the petitioner claims that unlawful command influence infected the post-trial proceedings after a senior Marine charged with supervising the trial counsel sent a letter to the defense counsel's reporting senior cautioning him on the defense counsel's "word choice."[5]

These issues are currently before the military judge and may also be reviewed during the normal course of review. As we discussed above, we recognize that given the petitioner's adjudged sentence, appellate review *may not* necessarily include review by our court. However, we disagree with the petitioner's assertion that his sentence "precludes the opportunity of direct appeal" and that he must "rely on hope alone of obtaining relief through the collateral appeal process via Article 69."[6] Neither the mandatory review by a Judge Advocate in Article 64, UCMJ, nor the petitioner's application for review by the JAG pursuant to Article 69(b), UCMJ, are collateral reviews. Rather, they form the statutory scheme of direct court-martial review created by Congress and signed into law by the President. The petitioner can receive the relief he requests through this process.[7] That review pursuant to Article 64, UCMJ, or Article 69(b), UCMJ, may not be the review the petitioner wants and might not lead to review by our court does not mean that the petitioner has "no other adequate means to attain relief." *Hasan*, 71 M.J. at 48. Therefore, we limit our discussion to the petitioner's request that we disqualify the military judge.

---

[5] Petition for Extraordinary Relief of 28 Feb 19 at 70.

[6] *Id.* at 44.

[7] *See* Article 64(c)(1)(A), UCMJ (providing that the CA "may disapprove or approve the findings or sentence, in whole or in part" upon recommendation of corrective action by a Judge Advocate); Article 69(b), UCMJ ("The findings or sentence, or both, . . . may be modified or set aside, in whole or in part, by the Judge Advocate General on the ground of . . . error prejudicial to the substantial rights of the accused.").

*2. Disqualification of the military judge*

A military "accused has a constitutional right to an impartial judge." *United States v. Martinez*, 70 M.J. 154, 157 (C.A.A.F. 2011) (citation omitted). R.C.M. 902 "divides the grounds for disqualification into two categories— specific circumstances connoting actual bias and the appearance of bias." *United States v. Quintanilla*, 56 M.J. 37, 44-45 (C.A.A.F. 2001). R.C.M. 902(b) lists five specific circumstances requiring disqualification, only one of which is arguably pertinent to the petitioner's case. R.C.M. 902(b)(1), requires disqualification "[w]here the military judge has a *personal bias* or prejudice concerning a party or personal knowledge of disputed evidentiary facts." (emphasis added).

R.C.M. 902(a) governs the appearance of bias and directs that "a military judge shall disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned." We use an objective standard to identify the appearance of bias: "[a]ny conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned." *Hasan*, 71 M.J. at 418 (first alteration in original) (citation omitted). Recusal of the military judge based on the appearance of bias "promote[s] public confidence in the integrity of the judicial process." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 858 n.7 (1988). "[W]hat matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994).

The petitioner alleges that the military judge exhibited actual bias, or in the alternative, the appearance of bias based on a perceived disparity in ruling on objections between the defense and the government; on the military judge's demeanor during the trial; and on the military judge's evidentiary and instructional rulings adverse to the defense. In support of his argument the petitioner compiled a statistical breakdown of objections sustained and overruled by the military judge and provided examples of the military judge interrupting the defense counsel. During the post-trial Article 39(a) session, the petitioner's defense counsel submitted four affidavits and called two witnesses. This evidence, argues the petitioner, showed that the military judge appeared to dislike the petitioner's defense counsel, was visibly frustrated with the defense counsel, and rolled his eyes and spoke to the defense counsel in a harsh tone. In short, the petitioner's allegations of bias are all centered on the military judge's rulings on objections, instructions, and evidentiary motions, as well as his interaction with his defense team, *during* the trial.

"There is a strong presumption that a judge is impartial, and a party seeking to demonstrate bias must overcome a high hurdle, particularly when the alleged bias involves actions taken in conjunction with judicial proceed-

ings." *Quintanilla*, 56 M.J. at 44. "[R]emarks, comments, or rulings of a judge do not constitute bias or partiality, 'unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.' " *Id.* (quoting *Liteky*, 510 U.S. at 555). In *Liteky*, the Supreme Court explained that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555. Rather, "only in the rarest circumstances" would a military judge's rulings "evidence the degree of favoritism or antagonism required" when no extrajudicial evidence of bias is involved. *Id.* Moreover, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.* Simply put, "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" do not establish bias or partiality. *Id.* at 555-56.

Because the petitioner's allegations of bias focus solely on the military judge's actions during the court-martial, and he has otherwise failed to rebut the strong presumption that the military judge is impartial, we find neither actual bias nor the appearance of bias. As a result, we conclude the petitioner has failed to demonstrate a clear and indisputable right to the writ and deny his petition.

## III. CONCLUSION

The petition for extraordinary relief in the nature of a writ of prohibition or a writ of mandamus is **DENIED** and the **STAY IS LIFTED**.

Senior Judge TANG concurs.

LAWRENCE, Judge (dissenting):

Fundamentally, as an Article I court, our jurisdiction is limited to the powers conferred by statute and "we may not act unless Congress has given us the authority to do so." *Loving v. United States*, 62 M.J. 235, 239-40 (C.A.A.F. 2005). Here, the adjudication of a sub-jurisdictional sentence forecloses our direct means of review and, absent discretionary action of the Judge Advocate General (JAG) to send the matter for our review, we will never have jurisdiction over the matter. Any consideration of the merits of this petition necessarily relies upon improper expansion of our jurisdiction beyond statutory grant, thereby functioning as an advisory opinion. Therefore, I cannot join in any part of the majority opinion and respectfully offer my dissent.

The path to both our actual and potential jurisdiction is through Article 66(b), UCMJ, 10 U.S.C. § 866(b) (2012), where the JAG "*shall* refer to a Court

of Criminal Appeals [(CCA)]" those cases that enjoy jurisdiction as defined by the statute. Art. 66, UCMJ (emphasis added). Critically different is Article 69, UCMJ, where the JAG *may* send the case for our review of matters of law.

The simple and unambiguous language of the statute cannot be over-looked—the Judge Advocate General has absolute discretion to act on a case with a sentence below the jurisdictional limit of this court (a sub-juris-dictional case). First, the JAG may simply identify, *sua sponte*, "newly discov-ered evidence, fraud on the court, lack of jurisdiction over the accused or the offense, error prejudicial to the substantial rights of the accused, or the ap-propriateness of the sentence." Art. 69(b), UCMJ. Most cases of this nature, however, arise by way of application to the JAG by a petitioner using these same grounds to pray for relief. Once in receipt of such an application, the JAG alone has statutory authority to review and decide whether to take ap-propriate action by (1) denying the application, (2) setting aside the findings or sentence, (3) ordering a rehearing, (4) dismissing the charges, or (5) sending it to the CCA for Article 66, UCMJ, review. Art. 66(c) and (d), UCMJ. Here, the majority opinion has recognized our limited jurisdiction, but, without explanation, dispensed with the central role of the JAG by con-sidering the merits of a sub-jurisdictional matter *not* sent to us by the JAG.

We have no authority to decide this case. By doing so, we usurp the pow-ers Congress specifically vested in the JAG to consider sub-jurisdictional ap-plications and determine whether they may be resolved through other means under his discretion or are appropriate to be sent for CCA review. Far from this being "in aid of" our jurisdiction under the All Writs Act, 28 U.S.C. 1651(a), the majority has *created* jurisdiction where there is none and sought to resolve the merits of the petition. This we cannot do.

Cited by the majority to support the doctrine of potential jurisdiction, the Supreme Court in *FTC v. Dean Foods Co.* noted that "where a case *is within the appellate jurisdiction* of the higher court a writ . . . may issue in aid of the appellate jurisdiction." 384 U.S. 597, 603 (1966) (quoting *McClellan v. Car-land*, 217 U.S. 268, 280 (1910)) (alteration in original) (emphasis added). The Court went on to cite other cases in which an injunction was appropriate to *preserve* the court's jurisdiction pending other administrative actions or other review required under statute. *Id.* at 604-05. (The Court noted that, absent injunctive relief, undoing a merger and effectively restoring the competitive marketplace would be impossible should courts of appeals not step in prior to irreparable harm having been suffered.) The Court said that "[i]t would stul-tify congressional purpose to say that the [Federal Trade] Commission did not have the incidental power to ask the courts of appeals to exercise their authority derived from the All Writs Act." *Id.* at 606.

Here, the majority advances a position that is directly at odds with both the language and clear intent of our jurisdictional statute. In enacting Article 69, UCMJ, the Congress specifically conferred upon the JAG—not the CCA— authority to consider alleged errors in a case with a sub-jurisdictional sentence. In doing so, Congress made abundantly clear that there would be an intermediary and indispensable step before we might ever consider such a matter. Unlike in *Dean Foods Co.*, no harm whatsoever would be suffered by this petitioner should the process play out as expressed in statute. Only our stay of proceedings below to consider this petition has interrupted completion of the Article 39(a), UCMJ, session and action by the convening authority (CA). Nonetheless, the majority opinion would have us *gain*—that is, manufacture—potential jurisdiction by circumventing the express authority of the JAG with the boldness to presume his discretionary action in Article 66(d), UCMJ.

Because this special court-martial had the authority to adjudge a sentence within the appellate jurisdiction of this court, prior to the moment this sub-jurisdictional sentence was announced, we *had* potential jurisdiction. However, the moment the trial court adjudged the sentence it did, we no longer had potential jurisdiction. I recognize and agree with the line of cases cited in the majority opinion in which the Court of Appeals for the Armed Forces (CAAF) has recognized the application of the doctrine of potential jurisdiction as it relates to Article 66, UCMJ. *See Howell v. United States*, 75 M.J. 386 (C.A.A.F. 2016) (vacating military judge's ruling directing the CA to provide Article 13, UCMJ, sentencing credit in the CA's action); *LRM v. Kastenberg*, 72 M.J. 364 (C.A.A.F. 2013) (granting pre-trial motion allowing special victims' counsel to be heard on factual matters); *Hasan v. Gross*, 71 M.J. 416 (C.A.A.F. 2012) (granting pre-trial removal of the military judge for bias, *inter alia*, ordering the forcible shaving of Hasan). The common theme running through each of these cases is that—whether the case was in its infancy, in pre-trial motions, or after the close of courtroom proceedings while awaiting CA's action—they all had Article 66, UCMJ, qualifying punishments in play. However, what we *once* had jurisdiction over does not continue indefinitely. *Clinton v. Goldsmith*, 526 U.S. 529, 536 (1999) (explaining that there is no source of continuing jurisdiction over actions that a military appellate court had at one time the power to review).

The majority is unnecessarily transfixed by the argument that the CAAF's decision in *United States v. Arness*, 74 M.J. 441 (C.A.A.F. 2015), is inapplicable to this case, while *Howell v. United States*, 75 M.J. 386 (C.A.A.F. 2016), does apply, based upon the manner of writ employed in each case. Simply put, *Arness* is a case in which the CAAF recognized the JAG's defined role under Article 69, UCMJ, to provide the appellate review for a sub-jurisdictional case and rejected the ability of CCAs to seize extraordinary writ

jurisdiction and entertain the petition. On the other hand, *Howell* had received a sentence that would—unless *reduced* below the jurisdictional threshold by the relatively unfettered powers the CA had at that time—mandate the JAG's referral to the CCA under Article 66, UCMJ. At its core, at the time of that petition, this court in *Howell* had a clear and unimpeded path to eventually hearing the matter. That is not the case here.

In *Arness*, the CAAF considered and explicitly "repudiate[d] the expansive approach taken" in a line of cases that "entertain[ed] petitions for extraordinary relief where the sentence was less than that required for review before the service courts." *Arness*, 74 M.J. at 443. The majority here argues similarly to the Air Force Court of Criminal Appeals in *Arness* when they averred they had jurisdiction "because the [JAG] *could have* sent the case to the CCA for review." *Id*. at 442 (emphasis added).[1] However, as in *Arness*, the analysis here is also very straightforward as the JAG's action in referring a sub-jurisdictional case to the CCA is indeed a statutory prerequisite for our review. *Id*. at 443. Further, as emphasized in the concurring opinion in *Arness*, "if [the JAG's] actions were subject to CCA review without referral to the CCA by the [JAG], then we would expect to have seen multiple cases involving such exercise of jurisdiction." *Id*. at 446 (Baker, J., concurring).

The majority's expansive view of the doctrine of potential jurisdiction is erroneous.[2] In order to apply the doctrine of potential jurisdiction, there logically must be a path to this court's jurisdiction that is not exclusively reliant upon favorable consideration of matters by the JAG *and* his certification to this court for review.

Nonetheless, the majority suggests that the "prerequisites" of the CA *not* taking action to *disapprove* a jurisdictionally-qualifying sentence and the JAG reviewing and affirmatively deciding to send a matter to the CCA are on equal footing. No such parallel was drawn in *Howell* to reject the CAAF's decision in *Arness*—note that *Arness* was not cited, much less questioned or dis-

---

[1] "Simply put, the petitioner's case *may* yet reach our court." Majority Opinion at *6.

[2] While not cited by the majority opinion as consistent with the position they espouse, in light of the CAAF's later holding in *Arness*, I doubt the continued validity of this court's opinion in *United States v. Booker*, 72 M.J. 787 (N-M. Ct. Crim. App. 2013) as concerns application of Article 69, UCMJ. Although the vast majority of that opinion should remain intact as applied to this court's jurisdiction in Articles 62 and 66, UCMJ, any discussion of our ability to claim jurisdiction independent of JAG referral under Article 69(d), UCMJ, has equally been "repudiate[d]" by *Arness*.

tinguished in *Howell*—and it is not valid to suggest these "prerequisites" are on par with one another or unimportant.

Lastly, the majority here fails to provide any rational link between the most technical—and inconsequential—effect upon the findings and sentence in the conclusion of the Article 39(a), UCMJ, and how that allows this court to bypass the JAG. Granted, the military judge in the post-trial Article 39(a), UCMJ, session may reconsider his rulings, and the "findings and sentence could be affected."[3] While that is indeed a possible outcome of the hearing, there remains no approach by which the sub-jurisdictional sentence announced by the members panel could be *escalated* by the military judge to gain our jurisdiction. The majority opinion recognizes as much in stating that

> nothing the military judge does, and nothing the convening authority can do at this stage of the proceedings, will bring the petitioner's sentence within the ambit of our Article 66, UCMJ, jurisdiction. Rather, the only way for this court to gain jurisdiction over the petitioner's case is for the JAG to refer the case to our court pursuant to Article 69(d), UCMJ.[4]

I am at a loss how that allows this court to claim jurisdiction in a sub-jurisdictional case that completely ignores the JAG's indispensable role.

Potential jurisdiction applies to a host of cases in which the process with respect to the findings or sentence is yet incomplete. Effectively, an unlimited range of options may play out in these cases, allowing us to consider that there is potential for our jurisdiction under Article 66, UCMJ. We necessarily take action to preserve—aid—our ability to continue the development of what is then an open-ended question. That is not the case here and in other cases where the announced sentence was definitively and forever below our direct statutory threshold. We do little to discourage piecemeal litigation, we increase delay, and we effectively provide an advisory opinion when we consider the merits in a matter such as this, which is one or more steps premature or may never ripen at all, absent independent action by the JAG. We also all but invite an accused with a sub-jurisdictional sentence to completely bypass

---

[3] Majority Opinion at *7.

[4] *Id.* at *5.

the statutory review scheme set out in Articles 64, 69(a), and 69(b), UCMJ, by immediately petitioning this court for extraordinary relief.[5]

Proper application of the statute and the doctrine of potential jurisdiction preserves those petitions for extraordinary relief brought by petitioners *prior to* announcement of a sub-jurisdictional sentence, where potential appellate jurisdiction still exists. Because the petitioner's adjudged sentence does not—and cannot—qualify for automatic review by our court pursuant to Article 66, UCMJ, and because the petitioner has not submitted an application to the JAG for consideration, much less the petition sent to this court pursuant to Article 69(d), UCMJ, we have no authority to presume the JAG's action and create jurisdiction where we have none. Consequently, I would deny the writ on jurisdictional grounds alone without offering any consideration of the merits.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[5] We would equally be inviting an accused whose sub-jurisdictional case was referred to trial on or after 1 January 2019, to bypass the new statutory review scheme set out in Article 69(d), UCMJ (2019).