RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0139p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee*,

*v.*

> Nos. 22-6043/6044

DIMITAR PETLECHKOV,

> *Defendant-Appellant*.

─────────────────

Appeal from the United States District Court for the Western District of Tennessee at Memphis.
No. 2:17-cr-20344-1—Jon Phipps McCalla, District Judge.

Argued:  June 6, 2023

Decided and Filed:  June 28, 2023

Before:  SUHRHEINRICH, THAPAR, and LARSEN, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Mariel A. Brookins, CLEMENT & MURPHY, PLLC, Alexandria, Virginia, for Amicus Curiae.  Christopher E. Cotton, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.  Dimitar Petlechkov, Bulgaria, pro se, via Zoom. **ON BRIEF:**  Mariel A. Brookins, CLEMENT & MURPHY, PLLC, Alexandria, Virginia, for Amicus Curiae. Christopher E. Cotton, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.  Dimitar Petlechkov, Bulgaria, pro se.

———————————

**OPINION**

———————————

THAPAR, Circuit Judge.  This is Dimitar Petlechkov's third time before us.  He now challenges the final forfeiture order entered in his criminal case and the denial of five other motions.  We affirm in part, reverse in part, vacate in part, and remand for further proceedings.

I.

Nearly a decade ago, FedEx discovered that Dimitar Petlechkov was engaged in fraud. *See United States v. Petlechkov* (*Petlechkov II*), No. 21-5174, 2022 WL 168651, at *1 (6th Cir. Jan. 19, 2022).  FedEx gives shipping discounts to high-volume customers.  *Id.*  So Petlechkov posed as a vendor for General Dynamics, obtained a steep shipping discount, offered those services to others at a lesser discount, and pocketed the difference.  *Id.*

After an investigation, the government charged Petlechkov with twenty counts of mail fraud under 18 U.S.C. § 1341.  A jury convicted on all counts.  On appeal, we vacated seventeen counts, affirmed three, and remanded for resentencing.  *United States v. Petlechkov* (*Petlechkov I*), 922 F.3d 762, 771 (6th Cir. 2019).  The district court resentenced Petlechkov to thirty-seven months' imprisonment and two years' supervised release, referred him for deportation proceedings upon completion of his prison sentence, entered a money judgment against him, and awarded restitution.  To satisfy the money judgment, the court also entered a preliminary forfeiture order that allowed the government—if needed—to seize and sell three substitute properties.  Petlechkov again appealed, this time challenging his sentence, the restitution award, the preliminary forfeiture order, and the denial of his new-trial motion.  We affirmed. *Petlechkov II*, 2022 WL 168651, at *7.

Once we affirmed, the district court entered the final forfeiture order.  But before it did, it added a new provision.  Petlechkov wasn't making restitution payments.  And after the preliminary forfeiture order had been entered, the government realized it would probably only need to sell two of the properties to satisfy the judgment, not all three.  So the government asked the court to add a provision to the final forfeiture order allowing it to sell the third property to

pay the restitution award. Once Petlechkov had a chance to respond, the court added the requested provision and entered the final forfeiture order. It did not cite relevant authority or give reasons for adding the provision or overruling Petlechkov's objection.

In response, Petlechkov filed several pleadings. First, he moved to vacate the final forfeiture order. Second, he petitioned for a writ of coram nobis, which allows a petitioner to attack his conviction and civil penalties after he's been sentenced. *See Chaidez v. United States*, 568 U.S. 342, 345 n.1 (2013). Finally, Petlechkov also sought to compel the prosecutors to investigate an alleged conspiracy or face sanctions, requested damages, and moved to dismiss his counsel. The government responded and asked the court to limit Petlechkov's filings.

The district court denied Petlechkov's motions and imposed the filing restriction. Petlechkov timely appealed pro se.[1] We appointed an amicus curiae to brief the forfeiture issue. She has thoughtfully discharged her responsibilities.

II.

In denying Petlechkov's motion to vacate the final forfeiture order, the district court erroneously held that Petlechkov lacked standing. It's true that Petlechkov lacks standing to challenge the provisions in the final order that had been included in the original forfeiture order. But he does have standing to challenge the new provision that the district court added before entering the final forfeiture order. *See Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) ("Standing is not dispensed in gross. To the contrary, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." (cleaned up)).

---

[1]Since the final forfeiture order terminates the post-judgment proceedings, we have jurisdiction over appeals from that order as well as the order imposing filing restrictions, denying damages and sanctions, and ruling on the motion to dismiss counsel made during that litigation. *See JPMorgan Chase Bank, N.A. v. Winget*, 920 F.3d 1103, 1106 (6th Cir. 2019); *United States v. Machado*, 465 F.3d 1301, 1305 n.1 (11th Cir. 2006) (amendments made after the entry of the preliminary forfeiture order become final upon entry of final forfeiture order), *overruled in part on other grounds by United States v. Lopez*, 562 F.3d 1309 (11th Cir. 2009); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 24 F.4th 242, 255 (3d Cir. 2022) ("A [post-judgment] proceeding is final when all that remains is for a non-judicial officer to take and dispose of the defendant's property." (cleaned up)). Since Petlechkov's criminal case is final, we also have jurisdiction over his coram-nobis petition. *See United States v. Denedo*, 556 U.S. 904, 914 (2009).

To see why, consider the structure of criminal forfeiture proceedings. These proceedings take place in two parts. *See* Fed. R. Crim. P. 32.2, advisory committee note to 2000 adoption, subdiv. (b). The first part of the process—which focuses on the defendant's interest in the property—ends with the entry of a preliminary forfeiture order. After its entry, the parties get the chance to request modifications. The order then becomes final when the defendant is sentenced (or sooner, if the defendant consents). *United States v. Schwartz*, 503 F. App'x 443, 447 (6th Cir. 2012); *see United States v. Flanders*, 752 F.3d 1317, 1343 (11th Cir. 2014). When the order becomes final, the defendant's interest in the property is extinguished, and the government receives "clear title to the property that is the subject of the order of forfeiture." *See* 21 U.S.C. § 853(n)(7).

Second, in an ancillary proceeding, the district court considers third-party claims on the property. When that ancillary proceeding concludes, the court enters the "final order of forfeiture." Fed. R. Crim. P. 32.2. The final order is typically the same as the preliminary order, amended only to reflect the results of the ancillary proceeding. *See* Fed. R. Crim. P. 32.2(c)(2) ("When the ancillary proceeding ends, the court must enter a final order of forfeiture by amending the preliminary order as necessary to account for any third-party rights.").

Since the preliminary order extinguishes the defendant's interest in the forfeited property, the defendant typically lacks standing to challenge the final forfeiture order. That's because standing requires an injury. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). And by the time the final forfeiture order is entered, the defendant usually has no remaining interest in the property. *See, e.g.*, *United States v. Bane*, 948 F.3d 1290, 1294 (11th Cir. 2020). Without an interest in the property, he suffers no injury when the property is finally sold.

It's for this reason that Petlechkov lacks standing to challenge the provisions in the final order that also appeared in the preliminary order. Those provisions authorized the forfeiture of three substitute properties "up to the value" of the money judgment—a sum of $367,099.62. *See Petlechkov II*, 2022 WL 168651, at *5 (quoting 21 U.S.C. § 853(p)). Petlechkov challenged those provisions when the preliminary forfeiture order became final. *See id.* And since his challenge failed, when that round of litigation concluded, Petlechkov lost his interest in those

properties to the extent needed to satisfy the money judgment. Thus, Petlechkov isn't injured when the final order disposes of those properties to satisfy the money judgment.

But the amendment is a different story. This new provision affects a property interest that hasn't been extinguished—or even addressed yet—in prior rounds of litigation: Petlechkov's interest in the property *beyond* the value of the money judgment. The original order eliminated Petlechkov's interest in the properties to the extent needed to satisfy the $367,099.62 judgment; it left his interest in the properties beyond that sum untouched. The new provision, by contrast, further extinguishes his interest in the properties by the amount required to satisfy the restitution award, another $801,219.02. Since the amendment diminishes that interest by another $801,219.02, he has standing to challenge it. *See CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 486 (6th Cir. 2021).[2]

The government takes a different view, but it makes an important concession: Section 853 by itself doesn't allow the government to keep more property than is needed to pay the money judgment. At oral argument, the government contended that Section 853 vests full title to all three properties in the government until the money judgment's been satisfied and then requires the return of any remaining property. One problem with this theory: it lacks grounding in the text. There is no mechanism in Section 853 for vesting full title to all substitute properties in the government and then returning them. That said, the government's argument shows that even it agrees that, under Section 853, a defendant maintains some interest in the excess property.

---

[2]Amicus offers another way to think about why Petlechkov has standing. All agree that defendants have standing to challenge preliminary forfeiture orders. And what makes a preliminary order final is that it's gone through the proper forfeiture procedures. Since the new provision hasn't gone through those procedures, it's still only a preliminary order. Thus, Petlechkov has standing to challenge it.

This theory is initially appealing, but it does raise some complications. First, it presupposes that the new provision concerns forfeiture. But if this provision involves restitution instead, then different statutory provisions may apply. Second, if this provision is a preliminary order, when does it become final? Under Criminal Rule 32.2, after a preliminary order's entered, the parties may request modifications. Fed. R. Crim. P. 32.2(b)(2)(B). It then becomes final as to the defendant at sentencing or, by consent, at some earlier time. Fed. R. Crim. P. 32.2(b)(4)(A). But Petlechkov has already been sentenced. So does the new provision automatically become final when entered? That would deprive Petlechkov of an opportunity to "suggest revisions." Fed. R. Crim. P. 32.2(b)(2)(B). And if it's not final, what triggers finality? Sentencing has already happened.

In any event, we agree that Petlechkov's unadjudicated property interest gives him standing, so we need not resolve these matters.

In short, Petlechkov has standing to contest the new provision but not the rest of the order.

III.

Turning to the merits, Petlechkov argues that the district court lacked the authority to add the new provision. As he explains, forfeiture and restitution are distinct proceedings governed by different statutes. *See* 21 U.S.C. § 853 (forfeiture); 18 U.S.C. § 3663 *et seq*. (restitution). And the new provision concerns restitution, not forfeiture. As a result, Petlechkov argues the district court erred by attaching what was in effect a restitution proviso to a forfeiture order.

While courts need not issue forfeiture and restitution rulings in separate orders, we agree that the district court here identified no authority for adding the new provision. The only statute the district court cites in its forfeiture order is the federal criminal forfeiture statute. And as Petlechkov notes, this statute doesn't contain a provision authorizing the court to order the sale of property to satisfy a restitution award. So the court's cited authority doesn't support the addition.

Nor does the amendment meet the requirements of three other plausibly applicable statutes: 18 U.S.C. § 3664, 28 U.S.C. § 3203, and 28 U.S.C. § 3205.

*Section 3664*. At first glance, the new provision seems to be an amendment to Petlechkov's restitution-payment schedule under Section 3664. *See* 18 U.S.C. § 3664(k) (authorizing such amendments). Indeed, at the resentencing hearing, the district court appeared to contemplate making just such an amendment if Petlechkov were deported. But altering a restitution schedule requires a finding that doing so is in the "interests of justice." *Id*. And after Petlechkov's deportation, the court made no such findings. So Section 3664 doesn't appear to be the basis for the new provision, and if it were, the district court didn't make the findings it requires. *United States v. Carson*, 55 F.4th 1053, 1058–59 (6th Cir. 2022).

*Section 3203*. Alternatively, the new provision could be read as a writ of execution. Under Section 3203, district courts may issue such writs to order the sale of property subject to a restitution lien. And since Petlechkov has failed to make restitution payments, liquidating his

property may be necessary to collect the restitution award. But the government didn't request a writ, nor did the district court cite Section 3203 as a rationale for ordering the sale. The new provision also doesn't comply with Section 3203's requirements, which include listing information such as the interest the defendant owes and the sum due on the date the writ is issued. *See* 28 U.S.C. § 3203(c).

*Section 3205*. Finally, the government asserts that Section 3205 also gives the court authority to enter such an order. While that may be true, the court didn't comply with Section 3205's requirements either. For example, a writ of garnishment must state the "nature and amount of the debt owed" and that, in the past thirty days, the government has made a demand for payment that was not satisfied. *Id.* § 3205 (b)(1)(B). This information is missing from the new provision.

Since the district court didn't offer any reason for imposing the new provision, cite any authority for adding the provision, or comply with any apparently available authority, we vacate the provision. On remand, the court may reorder the liquidation of the excess property so long as it follows any applicable statutory requirements.

IV.

Next, Petlechkov challenges the denial of his coram-nobis petition.

A.

First, we must determine whether the district court has jurisdiction over Petlechkov's petition. A court's authority to hear a coram-nobis petition typically derives from its jurisdiction over the petitioner's criminal case. *See United States v. Denedo*, 556 U.S. 904, 914 (2009). But it's possible to bring a coram-nobis petition too soon. If the petitioner files while he's still "in custody," our existing precedent suggests that federal courts lack jurisdiction over that petition. *See United States v. Sandles*, 469 F.3d 508, 517–18 (6th Cir. 2006). That rule may not be jurisdictional. *See Wilkins v. United States*, 143 S. Ct. 870, 877–78 (2023) (discussing "drive-by jurisdictional ruling[s]" (cleaned up)). But whether it's jurisdictional doesn't matter here. Why?

Because even though Petlechkov was on supervised release when he filed his petition, he wasn't "in custody."

Under existing Supreme Court precedent, supervised release typically counts as "custody" because the measure of being "in custody" is whether a defendant faces "severe restraints on individual liberty." *Hensley v. Mun. Ct.*, 411 U.S. 345, 351 (1973). Such restraints include the obligation to appear before government officials on demand, to live and work where the government says, and to socialize only with people the government designates. *Id.*; *Jones v. Cunningham*, 371 U.S. 236, 242 (1963). And these are the sorts of restraints that a petitioner on supervised release usually faces. *In re Stansell*, 828 F.3d 412, 416 (6th Cir. 2016).

But this isn't a typical case. When Petlechkov filed his coram-nobis petition, he'd already been deported. In Petlechkov's case, that meant that while he was technically on supervised release, he wasn't subject to any of the "restraints on liberty" that a supervisee usually faces. He wasn't under court supervision, subject to home searches or drug checks, or required to meet with probation officers. He was free to live where he wished, to socialize with whomever he wanted, and to pursue whatever work he liked. True, he couldn't travel to the United States. But that's so for many people outside of our borders. And that doesn't mean they're in the United States's custody. Thus, Petlechkov wasn't "in custody" and was free to seek coram-nobis relief.

B.

Even so, the petition fails on the merits. A writ of coram nobis is an "extraordinary" remedy used only to correct "fundamental" errors. *United States v. Castano*, 906 F.3d 458, 462 (6th Cir. 2018) (quoting *United States v. Morgan*, 346 U.S. 502, 512 (1954)). A petitioner is entitled to the writ only if he identifies a legal or factual error so significant that it would've likely changed the outcome of the challenged proceeding. *Id.* at 462 & n.1.[3] And claims that could have been raised on direct appeal or in habeas don't qualify. *Id.* at 463–64.

---

[3]The district court's opinion suggests that the writ only corrects errors of fact. That seems to have been true at the Founding. *See Ragbir v. United States*, 950 F.3d 54, 60–61 (3d Cir. 2020). But the Supreme Court has since stated that the writ applies to errors of law as well as fact, and our court has followed it. *Denedo*, 556 U.S. at 912–13; *see Castano*, 906 F.3d at 462 n.1.

Petlechkov doesn't carry his burden. His petition first challenges the calculation of the restitution award, arguing that the district court overestimated the losses his fraud caused and that FedEx is not a "victim" under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A. But Petlechkov raised these claims in his direct appeal. Since coram nobis isn't available for claims that could have been raised on direct appeal—and especially not for claims that *were*—these fail.

Petlechkov also brings two claims for ineffective assistance of counsel: one from resentencing and the other from his second appeal.[4] To prevail on such claims, a petitioner must show that his counsel performed deficiently and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Since Petlechkov argues that he couldn't have brought these collateral claims on direct appeal or in a habeas petition—a point the government doesn't contest—we assume they're cognizable. Even so, they lack merit.

First, Petlechkov claims that his counsel failed to submit an important invoice when the court was calculating the restitution award at resentencing. According to Petlechkov, this document shows that one of his clients, who used FedEx's economy services before Petlechkov started offering discounted premium services, reverted to using those same economy services after Petlechkov's fraud was discovered. In other words, Petlechkov claims this invoice establishes that his fraud in fact benefited FedEx by increasing the volume of premium services it sold.

Since Petlechkov doesn't show that the invoice would have changed the restitution award, this claim fails. *See Castano*, 906 F.3d at 462. The court calculated restitution based on how much Petlechkov's fraud cost FedEx. To establish that his fraud benefited FedEx instead, Petlechkov would have to show that FedEx made more money selling steeply discounted

---

[4]Petlechkov assumes that ineffective-assistance-of-counsel claims are available at coram nobis, and the government doesn't challenge that point. Thus, we assume such claims are available for this appeal as well. *See Denedo*, 556 U.S. at 917; *Chaidez*, 568 U.S. at 345 n.1.

The government also doesn't argue that Petlechkov's status as a deported alien prohibits him from petitioning for the writ. While the Supreme Court has said the writ's scope extends to legal errors, it's never held or even suggested that the writ is available to deported aliens. *See Denedo*, 556 U.S. at 917. But since the government doesn't challenge Petlechkov's ability to file a petition and Petlechkov's criminal case provides jurisdiction, we assume he can.

premium services to him than it would have made selling undiscounted economy services directly to his clients. Nothing in the invoice or the briefs suggests that's so.

Second, Petlechkov claims his counsel failed to raise a potentially winning argument on appeal. He says that his counsel should have argued that the district court's calculation of FedEx's losses was too "speculative." R. 311, Pg. ID 3301–02. But Petlechkov's counsel did make that argument. On appeal, his counsel expressly claimed that the court failed to make a "reasonable estimation" of FedEx's losses. *See* Brief of Defendant-Appellant at 35, *United States v. Petlechkov*, Nos. 21-5174/21-5199 (6th Cir. 2022), 2021 WL 1935972 (brief from prior appeal). And in our decision, we explained that the court's estimate was in fact "reasonable," that it was based on sufficient evidence, and that the court adequately considered the entire record. *See Petlechkov II*, 2022 WL 168651, at *4.

In short, Petlechkov's claims fail on the merits. So denying his petition with prejudice was appropriate. Claims may be dismissed with prejudice when amendment is futile. *Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 457 n.* (6th Cir. 2021). That was the case here. Petlechkov has already litigated the merits of his restitution award four times: in his criminal case, on direct appeal, again via his coram-nobis petition, and again in this appeal. The arguments he raises are largely the same, and nothing suggests that amending again would change the result. We affirm.

V.

Next, we turn to Petlechkov's motion to compel. Petlechkov wants to force the assistant U.S. attorney ("AUSA") prosecuting his case to investigate an alleged conspiracy against him. Failing that, he says the prosecutor should be sanctioned.

No statute or provision of the Federal Rules empowers courts to tell AUSAs how to run investigations. And that's no surprise. The discretion afforded to law enforcement has deep roots, derived from our constitutional separation of powers. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 761 (2005); *Heckler v. Chaney*, 470 U.S. 821, 832 (1985). AUSAs are members of the Executive Branch, and the Constitution vests the executive power in the President alone. *Seila L. LLC v. CFPB*, 140 S. Ct. 2183, 2197 (2020). That means the President

and his officers, not the courts, supervise AUSAs and the investigations they perform. To be sure, Congress may provide remedies—within constitutional boundaries—if a prosecutor engages in litigation misconduct. *See, e.g.*, *United States v. True*, 250 F.3d 410, 413 (6th Cir. 2001) (citing Pub. L. No. 105-109, § 617, 111 Stat. 2519 (1997), *reprinted in* 18 U.S.C. § 3006A, Historical and Statutory Notes); 18 U.S.C. § 3162(b)(C). But Congress has not authorized courts to run prosecutors' offices, and under our system, we doubt it could. *Cf. United States v. Slone*, 969 F. Supp. 2d 830, 836–37 (E.D. Ky. 2013). The district court properly denied this motion.

The district court also correctly denied the motion for sanctions. Our circuit hasn't yet decided whether lower federal courts have the inherent power to sanction attorneys in criminal cases. *United States v. Llanez-Garcia*, 735 F.3d 483, 492 (6th Cir. 2013); *see also United States v. Aleo*, 681 F.3d 290, 306–12 (6th Cir. 2012) (Sutton, J., concurring). But even if that power does exist, this motion would still fail. Without proof of bad faith, sanctions are unavailable. *Aleo*, 681, F.3d at 305. And Petlechkov admits that he has no such proof. *See* Appellant's Br. 40 ("Defendant does not yet have the evidence necessary to bring such a claim.").

## VI.

Petlechkov also moved for damages against the United States. Construed liberally, this motion is really a civil counterclaim alleging a due process violation and resulting damages. But a civil counterclaim can't be brought in a criminal case. Rather, it must be filed as a separate civil suit. *See* Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure govern "in all civil actions"); Fed. Rs. Civ. P. 3–5 (providing the process for filing a civil claim); *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (holding that even pro se litigants must comply with the basic procedural requirements for bringing civil claims). The district court was correct to deny the motion. Rather than reach the merits, though, it should have dismissed the claim without prejudice to allow Petlechkov to refile it properly. Thus, we vacate and remand so that the district court can dismiss the claim without prejudice.

VII.

As for Petlechkov's motion to dismiss his counsel, that's now moot. Petlechkov explained that he filed this motion because the docket listed his old counsel as active even though they no longer represented him. Since then, the clerk of court has updated the docket, and the old counsel are now terminated.

VIII.

Finally, Petlechkov challenges the filing restriction. This order prevents him from filing new motions without first obtaining the district court's approval. We vacate the restriction and remand.

Filing restrictions are "the proper method for handling the complaints of prolific litigators," and a district court may impose one at its discretion. *Filipas v. Lemons*, 835 F.2d 1145, 1146 (6th Cir. 1987) (order). But when a court imposes such a restriction, it must still justify its rationale sufficiently. *Cf. United States v. Jones*, 980 F.3d 1098, 1116 (6th Cir. 2020). In other words, before a court can take the significant step of restricting a defendant— particularly a pro se defendant—from filing, it must show its work.

The district court didn't do that here. To impose a restriction in a case like this, the court should identify a "pattern of repetitive, frivolous, or vexatious filings." *See Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998). But the order identifies just one motion as frivolous and repetitive—Petlechkov's motion to vacate the final forfeiture order. As this opinion shows, that motion was neither. And while the district court's order suggests that Petlechkov filed other frivolous or repetitive motions, it doesn't identify them. As a result, we can't perform the requisite review to determine whether the district court properly exercised its discretion. *See, e.g., Mich. Div.-Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 524 F.3d 726, 740 (6th Cir. 2008).

Thus, we vacate the restriction and remand. On remand, the court may consider whether Petlechkov's other filings justify the restriction. If it finds they do, the restriction may be reimposed.

\*     \*     \*

We affirm in part, reverse in part, vacate in part, and remand for further proceedings.

The order denying Petlechkov's motion to vacate the final forfeiture order is reversed as to the new provision. That provision is vacated. Otherwise, the order denying the motion to vacate is affirmed.

The denial of a writ of coram nobis is also affirmed, as is the denial of the motion to compel. The denial of the motion for damages is vacated and remanded for dismissal without prejudice. The motion to dismiss counsel is dismissed as moot. And the filing restriction is vacated.

As we have resolved this appeal, Petlechkov's request for an expedited ruling on this appeal is denied as moot.

We remand for further proceedings consistent with this opinion.